Scott NEYENS, Theodore A. Pfiffner, and Charles S. Uskavitch, Appellants,

v.

Arthur J. ROTH, as Director of the City Health Department, City of Dubuque, Iowa, Leo F. Frommelt, as License Officer under Section 18–16 Ordinances of the City of Dubuque, Iowa, and as City Clerk of the City of Dubuque, Iowa, Ken Gearhart, as City Manager of the City of Dubuque, Iowa, and City of Dubuque, Iowa, a Municipal Corporation, Appellees.

No. 67083.

Supreme Court of Iowa.

Nov. 24, 1982.

William C. Fuerste of Fuerste, Carew, Coyle, Juergens & Sudmeier, Dubuque, for appellants.

Barry A. Lindahl, Dubuque City Sol., and R.N. Russo, Dubuque Corp. Counsel, Dubuque, for appellees.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS, and LARSON, JJ.

LARSON, Justice.

This appeal requires us to resolve whether a city ambulance service, operated as a monopoly, is subject to the provisions of the Iowa Competition Law, Iowa Code chapter 553, and if so, whether it is an activity which falls within the "state action" exemption of section 553.6(4). The district court ruled favorably to the city on both issues. We conclude the city's ambulance service is subject to the Iowa Competition Law and that it is not within the statutory exemption. Accordingly, we reverse.

The basic facts are not in dispute. In 1974, the defendant City of Dubuque enacted an ordinance which provided for the licensing of private ambulances and operators. The ordinance provided in pertinent part:

Sec. 18–32. Same—Investigation of applicant; issuance.

(a) The license officer shall, within thirty (30) days after receipt of an application for an ambulance license as provided for in this division, cause such investigation as he deems necessary to be made of the applicant and of his proposed operations.

(b) The license officer shall issue a license hereunder for a specified ambulance, to be valid for a period of three (3) years unless earlier suspended, revoked or terminated, when he finds:

(1) That each such ambulance, its required equipment and the premises designated in the application, have been certified by the health officer as provided for herein.

(2) That only duly licensed drivers, attendants, and attendant-drivers are employed in such capacities.

(3) That all the requirements of this article and all other applicable laws and ordinances have been met.

Until 1979, the Dubuque Fire Department remained unchallenged as the sole provider of ambulance service within the city. In May of 1979, the city council created a "task force study group" to review and evaluate the current ambulance service provided by the city fire department, identify alternatives, and make recommendations as to the best method of providing ambulance services. In December of that year the plaintiffs, who were medical technicians, approached the city manager to discuss the possibility of providing private ambulance service. He suggested they apply for the necessary licenses with the city clerk. Application forms were not available from the clerk; the plaintiffs, however, submitted their own applications with sufficient information in early January of 1980.

The clerk did not process these applications even though the ordinance required such action within thirty days; instead, he referred them to the city manager. Together, they decided to place the matter before the city council for decision. This

referral was allegedly prompted by the fact the "task force study group" had not yet made its final report and recommendation.

The final report of the task force was filed in mid-January, 1980, and recommended the city continue providing ambulance service through its fire department. Purportedly on this recommendation the city council, in April, amended the private licensing ordinance by providing an additional condition to issuance of a license to a private applicant:

Section 18–32(b)(4).

That the City of Dubuque, Iowa, is not engaged in furnishing, operating, conducting or maintaining, or otherwise be engaged in the business, of service of the transportation of patients upon the streets, alleys, or any public way or place of the City of Dubuque, Iowa.

On April 2, the plaintiffs filed a petition for writ of mandamus requesting the district court to order the city to process and grant their applications. Later, after passage of the amendment to the licensing ordinance, counsel for the plaintiffs met with the city manager. As a result of this meeting, the city manager forwarded the plaintiffs' applications to the director of the city health department who then conducted an inspection of the plaintiffs' ambulance and equipment. On April 30, he filed a written report stating the ambulance and equipment were satisfactory. This information was then given to the city clerk, the city manager, and the council.

Thereafter, the plaintiffs and their counsel again approached the city manager and the city attorney, requesting their applications be processed. Further action on their applications still remained delayed, however, until early May when the council received a memorandum from the city manager which stated in part:

Alternative No. 1 would be to refuse to grant the license[s to the plaintiffs] on the basis that the city is already in the business and/or some other "public interest" basis and wait for the court to determine if our action was appropiate or inappropriate.

Based on this recommendation, the council unanimously voted against issuing the licenses to the plaintiffs. The plaintiffs responded by amending their petition requesting the amended licensing ordinance be held invalid under the Iowa Competition Law and unconstitutional as a violation of due process and as a taking of private property, U.S.Const. art. I § 10, amend. XIV, § 1; Iowa Const. art. I §§ 1, 6, 9, 21 (1857).

The district court severed the issue of damages for a separate trial, Iowa R.Civ.P. 185(b), and found (1) the plaintiffs should have been granted the licenses; (2) the licenses were effective from the date they should have been granted; and (3) the amended ordinance was not invalid on either statutory or constitutional grounds, and did not apply to the plaintiffs because their licenses were deemed to have taken effect prior to its passage. Accordingly, the court concluded the City was liable under Iowa Code section 613A.2 (1979) for the clerk's "good faith" failure to process the applications.

The plaintiffs moved to enlarge or amend the findings and conclusions of the district court, Iowa Rule of Civil Procedure 179(b). First, they requested the district court amend its decree by finding that chapter 553 (Iowa Competition Law) applied. Second, they requested the district court to "protect" their judgment by ordering the defendants to refrain from immediately revoking their licenses and refusing to renew them in the future, under the amended ordinance. Third, they requested the district court to make specific findings and conclusions regarding their constitutional claims. The City resisted the post-trial motion, and thereafter the district court denied the plaintiffs' requests. Plaintiffs now appeal.

■ We initially note the plaintiffs filed their notice of appeal prior to trial on the issue of damages, which now has been stayed by the district court pending the resolution of this appeal. Under the circumstances, we find the judgment of the district court should be reviewed pursuant

to Iowa Rule of Appellate Procedure 1(c). The plaintiffs' petition was filed in equity; this court's review is therefore de novo. *See State v. Cedar Rapids Board of Realtors,* 300 N.W.2d 127, 128 (Iowa 1981) (de novo review of chapter 553 proceedings).

The district court held section 553.5 was inapplicable because no "trade or commerce" was involved. That statute provides:

A *person* shall not attempt to establish or establish, maintain, or use a *monopoly* of *trade or commerce* in a relevant market *for the purpose of excluding competition or controlling, fixing, or maintaining prices.*

(Emphasis added.) While this court has not previously construed chapter 553 in respect to the issues raised in this case, federal cases construing the Sherman Act are of some help, and our act expressly requires us to consider them. Iowa Code § 553.2. *See Cedar Rapids Board of Realtors,* 300 N.W.2d at 128.

The plaintiffs contend the district court erred in refusing to apply chapter 553 because (1) the city is a "person" subject to the act; (2) its ambulance service is a "monopoly" and (3) providing ambulance service is a "trade or commerce" under section 553.5.

The defendants respond that section 553.5 is inapplicable. They argue, however, the more pertinent issue is, as the district court found, whether the city's ambulance service falls within the scope of section 553.6(4), which provides an exception for "activities or arrangements expressly approved or regulated" by the state. They argue the city health officer acts "under authority of this state" because the licensing ordinance was enacted under the home-rule amendment, Iowa Const. art. III, § 39A (1968). They conclude the exemption in section 553.6(4) applies and thus, even assuming their actions were monopolistic, they are exempt from section 553.5.

I. *Application of Chapter 553.*

■ We first address the issue of whether the defendants' activities fall under the coverage of chapter 553. At the outset we note that the city is a "person" as that term is defined in the act, *see* sections 553.3(3) and (4), and that its exclusive control of ambulance licensing is a monopoly under the statute. *See United States v. Grinnell Corporation,* 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778, 786 (1966) (monopoly defined as "the power to control market prices or exclude competition."). The defendants do not argue these points; however, they argue, and the district court held, the city's ambulance service was not "trade or commerce" under the act.

"Trade or commerce," as used in the statute, is broadly defined as *"any economic activity* involving or relating to any commodity, *service,* or business activity." § 553.3(8) (emphasis added). The district court held the city ambulance operation was not a "service" because the activity "is a losing operation and not performed in whole or in part for financial gain," and thus no "trade or commerce" was involved.

■ The district court test lacks a statutory basis. Although "business activity" is undefined, section 553.3(7) broadly defines "service" as any activity which is performed in whole or *in part for financial gain.* Whether an activity is actually a profit-making operation is not determinative; rather the focus is whether the purpose of the activity is to generate revenue. *See United States v. National Association of Real Estate Boards,* 339 U.S. 485, 490–91, 70 S.Ct. 711, 714–15, 94 L.Ed. 1007, 1013–14 (1950). Testimony of city officials confirms the ambulance service was provided, at least in part, to generate revenue. In fact, the prospect of losing some of that revenue was given as a reason for attempting to retain the city's monopoly.

■ We conclude the city's ambulance operation is an "economic activity" under section 553.3(8) and therefore is "trade or commerce" subject to the restrictions of section 553.5. This view is consistent with the general principle that antitrust laws are remedial and should be broadly applied to effect their purposes. *See Abbott Labora-*

*tories v. Portland Retail Druggists Association, Inc.,* 425 U.S. 1, 11–12, 96 S.Ct. 1305, 1313, 47 L.Ed.2d 537, 547–48 (1976).

We now turn to the question of whether this service is exempt from our antitrust law.

## II. *Exemption of Section 553.6(4).*

Iowa's competition law includes certain exemptions, including one for "activities or arrangements expressly approved or regulated by any regulatory body or officer acting under authority of this state or of the United States." Iowa Code § 553.6(4).

This exemption parallels the "state action" exclusion from the Sherman Act, first recognized by the Supreme Court in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). *Parker* held that a state marketing program, which prevented a raisin producer from marketing his crop in interstate commerce, was exempt from antitrust attack because it constituted "state action":

> We find nothing in the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature. In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.

*Id.* at 350–51, 63 S.Ct. at 313, 87 L.Ed. at 326.

The defendants argue that their regulation of ambulance service is "under authority of this state" and therefore qualifies for exemption under section 553.6(4). The city's authority for such activities is granted by the state, they submit, through the Home Rule Amendment:

> Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the General Assembly, to determine their local affairs and government. . . .

Iowa Const. amend. 2 (1968).

The *Parker* exclusion for state action is based on the principle of federalism and a general deference to actions by a sovereign state. *See Parker* at 351–52, 63 S.Ct. at 313–14, 87 L.Ed. at 326; *Goldfarb v. Virginia,* 421 U.S. 773, 790, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572, 587 (1975); *Bates v. State Bar of Arizona,* 433 U.S. 350, 362, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810, 822 (1977); *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 400, 98 S.Ct. 1123, 1130, 55 L.Ed.2d 364, 374–75 (1978); *California Dealers v. Midcal Aluminum,* 445 U.S. 97, 103, 100 S.Ct. 937, 942, 63 L.Ed.2d 233, 242 (1980). In contrast, the Iowa exemption rests solely on section 553.6(4); the concept of federalism cannot be extended by analogy to the state-city relationship. A city is not a "sovereign" for such purposes. *See Community Communications Co. v. City of Boulder,* —— U.S. ——, ——, 102 S.Ct. 835, 840, 70 L.Ed.2d 810, 820 (1982). Despite the different rationale of the federal and state exemptions, however, we believe the similarity of language of the *Parker* exemption and section 553.6(4), as well as the legislatively expressed desire for uniformity, Iowa Code section 553.2, require us to give federal cases interpreting the *Parker* exemption considerable weight.

The test for exclusion under the federal act is whether the restraint on trade is (1) "clearly articulated and affirmatively expressed as state policy" and (2) "actively supervised by the state itself." *Midcal,* 445 U.S. at 105, 100 S.Ct. at 943, 63 L.Ed.2d at 243. *See also Community Communications,* —— U.S. at ——, 102 S.Ct. at 840, 70 L.Ed.2d at 810. The general rule is that exemptions from coverage of competition laws are to be narrowly applied. *See, e.g., Group Life and Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 232, 99 S.Ct. 1067, 1083, 59 L.Ed.2d 261, 280 (1979); *United States v. National Association of Securities Dealers, Inc.,* 422 U.S. 694, 719–20, 95 S.Ct. 2427, 2443, 45 L.Ed.2d 486, 504–05 (1975).

*Community Communications* examined whether a home-rule municipality, which enacted an ordinance prohibiting a permitee from expanding its cable television business for three months in order to encourage potential competitors to enter the market, was exempt from antitrust liability under *Parker*. Despite Colorado's broad grant of home rule authority,[1] the Supreme Court rejected the argument that this authority was a sufficient state involvement in the acts of trade restraint to cloak the city with its state action immunity.

The Court in *Community Communications* held that the monopolistic activities were not "clearly articulated and affirmatively expressed policy" of the state; it had merely permitted them under home rule.

> [P]lainly the requirement of "clear articulation and affirmative expression" is not satisfied when the state's position is one of mere *neutrality* respecting the municipal actions challenged as anticompetitive. A state that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can these actions be truly described as "comprehended within the powers granted," since the term, "granted," necessarily implies an affirmative addressing of the subject by the state. The state did not do so here. . . .

*Id.* at ——, 102 S.Ct. at 843, 70 L.Ed.2d at 821. Accordingly, the Court held the *Parker* exemption was inapplicable.

*Community Communications* was decided by the Supreme Court after the district court's conclusions of law were filed in this case. The court, therefore, did not have the guidance of that opinion. We believe the reasoning of *Community Communications* requires us to reject the defendants' argument that section 553.6(4) exempts their action from liability. Although they refer to legislation "which shows a similar intent to regulate and control health care services based upon criterion other than 'classic marketplace forces,'" Iowa Code section 135.61 (establishing the health care facilities council), the intent underlying this legislation does not amount to a "clearly articulated and affirmatively expressed state policy" favoring a city's monopoly of ambulance services, nor were the city's actions "expressly approved or regulated by . . . this state" as required by section 553.6(4). Rather, as stated in *Community Communications*, the state's position is one of mere neutrality.

The district court erred in concluding the exemption of section 553.6(4) applied.

REVERSED AND REMANDED.

1. The home-rule amendment considered in *Community Communications,* unlike Iowa's, provided that municipal ordinances "made pursuant thereto . . . shall supersede within the the . . . jurisdiction of said city or town any law of the state in conflict therewith." Colo.Const., art. XX, § 6.