Theodore A. PFIFFNER, Appellee,

v.

Arthur J. ROTH, as Director of the City Health Department, City of Dubuque, Iowa; Leo J. Frommelt, as Past License Officer under Section 18–16, Ordinances of the City of Dubuque, Iowa, and as Past Clerk of the City of Dubuque, Iowa; Mary A. Davis, as License Officer under Section 18–16, Ordinances of the City of Dubuque, Iowa, and as City Clerk of the City of Dubuque, Iowa; Ken Gearhart, as City Manager of the City of Dubuque, Iowa, and City of Dubuque, Iowa, a Municipal Corporation, Appellants.

No. 85–105.

Supreme Court of Iowa.

Dec. 18, 1985.

Barry A. Lindahl, Dubuque, for appellants.

William C. Fuerste and Allan J. Carew, of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

In an earlier appeal, we held that the Iowa Competition Law, Iowa Code chapter 553, was violated by the city of Dubuque, and various city officials, when they discouraged the operation of an ambulance business in competition with the city's. We remanded the case for assessment of damages. *Neyens v. Roth,* 326 N.W.2d 294 (Iowa 1982). After the first appeal, two of the original plaintiffs assigned their interests to the present plaintiff, Pfiffner, who pursued the case through the damage stage. This appeal is from a judgment awarding Pfiffner actual damages, punitive damages, and attorneys fees. We affirm.

The issues raised on appeal are: (1) whether a 1984 amendment to chapter 553, establishing an exemption for a city, is applicable; (2) whether the trial court improperly computed actual damages; (3) whether the court erred in awarding punitive damages; and (4) whether the court erred in its award of attorneys fees. (The defendants, including the city and various officers, will be collectively referred to in this opinion as the city.)

### I. *The 1984 Amendment.*

In considering the effect of the 1984 amendment to the competition law, exempting cities, a look at our earlier opinion is necessary. As we noted there, the impact of chapter 553, on a city, turned on two issues: First, whether a city is a "person" under the meaning of the act. We held it was, because of this language: "[A] 'person' means a natural person, estate, trust, enterprise or *government agency.*" Iowa Code § 553.3(4) (1979) (emphasis added). *See Neyens,* 326 N.W.2d at 297. A "government agency," in turn, is defined as "the state, its political subdivisions, and

any public agency supported in whole or in part by taxation." Iowa Code § 553.3(3) (1979). *See Neyens,* 326 N.W.2d at 297.

*Neyens* also considered the question of whether the city's regulation of the ambulance business was covered by Iowa Code section 553.6(4), which exempted from coverage of the Iowa Competition Law "[t]he activities or arrangements expressly approved or regulated by any regulatory body. or officer acting under authority of this state or of the United States." The city of Dubuque argued, in *Neyens,* that while cities were not specifically exempted by section 553.6(4), the city's actions here were nevertheless exempt, because its regulation of ambulance services was "under authority" of the state. 326 N.W.2d at 298. This argument was based on the "home rule amendment" which provided that "[m]unicipal corporations are granted home rule power and authority, not inconsistent with the laws of the General Assembly, to determine their local affairs, and government...." Iowa Const. amend. 2 (1968).

In *Neyens,* we held this constitutional grant of power did not make the city's ambulance regulation a state action; it only amounted to a position of neutrality on the part of the state. We noted that the Supreme Court had recently held that "state action," under the federal anti-trust act, could not be predicated on inaction by the state. To be clothed with immunity, the monopoly must be a "clearly articulated and affirmatively expressed policy" of the state. *Neyens,* 326 N.W.2d at 299 (quoting *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 54, 102 S.Ct. 835, 842, 70 L.Ed.2d 810, 821 (1982) ). As the Supreme Court said in *Community Communications,*

> plainly the requirement of "clear articulation and affirmative expression" is not satisfied when the State's position is one of mere *neutrality* respecting the municipal actions challenged as anticompetitive. A State that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can those actions be truly described as "comprehended within the powers *granted,*" since the term, "granted," necessarily implies an affirmative addressing of the subject by the State.

455 U.S. at 55, 102 S.Ct. at 843, 70 L.Ed.2d at 821 (emphasis in original).

For these reasons, we held that the exemption of section 553.6(4), provided for the state, did not apply to the city in this case. *Neyens,* 326 N.W.2d at 299.

After *Neyens* was decided, the legislature amended chapter 553 by adding a new subparagraph, section 553.6(5), to exempt "[t]he activities of a city ... when acting within its statutory or constitutional home rule powers and to the same extent that the activities would not be prohibited if undertaken by the state." *See* 1984 Iowa Acts ch. 1020, § 1. (At the same time, the legislature also amended chapter 553 to eliminate punitive damages against a city. That matter will be discussed later.)

Does the amendment to section 553.6 affect this case? The city of Dubuque says it does. First, it argues, the statute has always excluded cities from its coverage, and the 1984 amendment merely clarified the matter, thereby "correcting" the interpretation given to the statute by this court in *Neyens.* Alternatively, it argues the amendment should be given retrospective effect, even if it amounts to new law. We reject both arguments.

■■■ First, we think the amendment did more than merely clarify the prior law. As a general observation, a change such as this, which provided for an exemption where none existed before, would have to be considered a substantive change. In interpreting such an amendment to a statute, there is a presumption of a change in legal rights. 1A Sutherland, *Statutes and Statutory Construction* § 22.30, at 265 (Sands 4th ed. 1985). If the statute in its original form had been subject to doubts about its meaning, the argument that it was a mere clarification would, perhaps, be more tenable. *See* 2A Sutherland, *supra,*

§ 49.11, at 414 (1984). There was no such doubt in this case. Section 553.6(4) was clear; cities were not covered by the state-action exemption.

Even assuming the 1984 amendment created new law, the issue remains whether it should have retrospective effect as claimed by the city. We summarily dispose of this issue. The amendment does not say it is to be given retrospective application. It is therefore presumed to be prospective only. Iowa Code § 4.5. Moreover, this plaintiff had a right of recovery against the city under the old law but would have none under the new one. Ordinarily, we will not give retrospective effect to an amendment when it has that effect. *See Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 121 (Iowa 1984); 2 Sutherland, *supra*, § 41.02, at 247–49 (1973).

## II. *The Award of Actual Damages.*

The district court allowed actual damages based on lost profits from the time the license should have been issued, March 26, 1980, until December 26, 1982, the date on which procedendo was issued in the *Neyens* case. The city argues this was error, that the relevant period ended when the license was actually issued, on May 28, 1981.

Although the license was actually issued before *Neyens* was decided, it was issued pursuant to a mandamus order of the district court, which concluded the plaintiffs were entitled to it under a city ordinance. This was a hollow victory, however, because another ordinance also provided the license could be revoked, or a renewal refused, almost at will. The plaintiff was understandably reluctant to invest in a business which might be pulled out from under him. His position was not solidified until *Neyens* held the ordinances invalid. We believe the trial court correctly set the period for computing damages.

## III. *The Award of Punitive Damages.*

The Iowa Competition Law, at the time this case arose, expressly provided for exemplary damages. Iowa Code § 553.-12(3) (1979). It made no exception for cities.

The city argues the district court erred in awarding punitive damages against it because they were not allowable against a city under the competition law as it originally existed; and, in any event, the 1984 amendment protecting cities from punitive damages should control. It also argues that the evidence was insufficient to justify an award of punitive damages.

As already noted, chapter 553 in its original form included cities. It also provided for exemplary damages without any exception for cities. We discussed the rationale of awarding punitive damages against a city in *Young v. City of Des Moines*, 262 N.W.2d 612, 620–22 (Iowa 1978). The idea of punishing the actor, and deterring others, is a part of that rationale and is as relevant in the case of a public corporation as it is in any other. *Id.* at 620–21.

The legislature is capable of providing public corporations with protection from punitive damage awards. It did so, after *Young*, with respect to the tort claims act. *See* Iowa Code § 613A.4(5) (1985). The legislature also provided such protection with respect to our competition law, after *Neyens* was decided. *See* Iowa Code § 553.-12(3) (1985) (exemplary damages recoverable only "from a person other than a city or county or legal entity created by a city or county . . . ."). No such protection was provided by the original competition law, however, and we will not read one into it.

The city here asks that we give effect to the 1984 amendment, either under the theory it merely clarified the prior law, or by giving it retrospective effect as a substituted law. We reject these arguments for the same reasons we rejected the city's similar arguments under Division I.

The city argues that the evidence was insufficient, in any event, to justify punitive damages. Section 553.12 (1979) provided:

The state or a person who is injured or threatened with injury by conduct prohibited under this chapter may bring suit to:

. . . .

3. Recover, at the court's discretion, exemplary damages which do not exceed twice the actual damages awarded under subsection 2 if:

a. The trier of fact determines that the prohibited conduct is willful or flagrant; and,

b. The person bringing suit is not the state.

Our review of the record, which includes evidence of intentional delays by the city and its legislation aimed at stifling competition, leads us to the same conclusion as that expressed by the district court, which said:

The Court finds that the City Manager, in urging the adoption of, and the City Council in adopting, the amendment to the ordinance, and in denying Plaintiffs' licensure under "alternative No. 1" [which suggested that the council deny the license, then wait to see what a court would do] for the stated object of preserving revenue to the City, by the very nature of such communications and actions leading to such amendment and denial, were aware of and understood that they were acting to create and preserve a total monopoly in a private business activity to the detriment of Plaintiffs. The expression in alternative No. 1 of a hope that a Court might later find their action to be appropriate under some "public purpose" is not a sufficient basis for a finding that this intentional creation and perpetuation of a monopoly was innocent or inadvertent, when the injurious consequences to the Plaintiffs would be obvious. The conduct of the City of Dubuque through its City Manager and City Council is found to be, in the language of Section 553.12(3)(a), wilful and flagrant.

Under Iowa Code section 553.12(3) (1979), an award of exemplary damages is discretionary with the district court. We find no abuse of that discretion here.

IV. *Attorney Fees.*

█ The city challenges the district court's award of attorney fees on the ground it included fees for services on appeal, while the statute provided only for recovery of "the necessary costs of *bringing suit,* including a reasonable attorney fee." Iowa Code § 553.12(4) (emphasis added).

The plaintiff's lawyers were involved in this litigation for over five years. Testimony by lawyers in the record established a range of fees from $95,000 to $135,000. We believe the district court's allowance of $100,000 is well-supported by the evidence.

█ The district court was also correct in allowing fees for services rendered on appeal. While the statute provides for such fees in connection with "bringing suit," we believe an appeal to obtain, or preserve, a result in the suit is a necessary part of the attorney's services. Attorney fees should be recoverable for an appeal as well as a trial. This view is supported by *Perkins v. Standard Oil Co. of California,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), in which the Supreme Court held that, in federal antitrust litigation, attorney fees incurred as part of the "cost of suit," under the antitrust statute, should not be restricted to those incurred at trial. *Id.* at 223, 90 S.Ct. at 1990, 26 L.Ed.2d at 536.

We find no basis for reversal.

AFFIRMED.

All Justices concur except SCHULTZ, J., who dissents.

SCHULTZ, Justice (dissenting).

I dissent from Division III of the majority opinion. I would not allow the award of punitive damages against a city. *See Dickerson v. Young,* 332 N.W.2d 93, 105 (Iowa 1983) (Schultz, J., dissenting opinion). Otherwise, I concur.