Rose M. **THORP**, Individually and as Administrator of the Estates of Robert M. Thorp and Edwin G. Thorp, Deceased, Appellant,

v.

**CASEY'S GENERAL STORES, INC.,** d/b/a Casey's General Store; Edward C. Middleton and Ruth M. Middleton, d/b/a Midway Cafe and Bar; and State of Iowa, Appellees.

No. 88–943.

Supreme Court of Iowa.

Sept. 20, 1989.

As Amended Oct. 17, 1989.

David J. Grace of Davis, Grace, Horvath, Gonnerman, and Rouwenhorst, P.C., Des Moines, and W.N. Bump of Bump and Bump, P.C., West Des Moines, for appellant.

Michael V. Huppert of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker, and Ordway, Des Moines, for appellee Casey's General Stores, Inc.

Thomas S. Skorepa and Frank R. Fuhr of Klockau, McCarthy, Ellison, and Marquis, P.C., Rock Island, Ill., for appellees Edward C. Middleton and Ruth M. Middleton.

Thomas J. Miller, Atty. Gen., and Craig Kelinson, Sp. Asst. Atty. Gen., for appellee State of Iowa.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER, and SNELL, JJ.

SCHULTZ, Justice.

In this dramshop action we address issues of first impression concerning the constitutionality of the legislatively mandated, retrospective application of amendments to our Dramshop Act. We also address issues concerning proximate cause and the exemption of state employees from liability. We hold that federal and state due process protections void the retrospective application of the amendment which acts to deprive plaintiff of her vested rights in a cause of action against the dramshop. We further hold that the State is responsible for the acts of its employees who are not immune from liability for violating alcoholic beverage statutes. Finally, we hold that as the plaintiff was not required to prove that the sale and service to an intoxicated party was a proximate cause of her injury, she need not prove the consumption of intoxicants by that party. We also address other issues.

Robert Thorp, age 13, was fatally injured by a drunken driver, Anthony Vaughn, on April 1, 1985. Robert's mother, individually and as administrator of his estate and of his father's estate, brought this action against five parties who provided intoxicants to Vaughn. Two defendants settled with the plaintiff. Plaintiff's actions against Casey's General Store, Inc., who sold beer to Vaughn, and the State of Iowa, at whose liquor store Vaughn bought a bottle of whiskey, were dismissed under separate rulings by Judge Richard D. Morr. The remaining defendants', Edward C. Middleton and Ruth M. Middleton, owners of Midway Cafe & Bar, motion for summary judgment was granted by Judge Peter A. Keller on the basis that there was no evidence that Vaughn had consumed any alcohol at the cafe-bar.

Plaintiff appeals, claiming that the trial court erred (1) in holding that the 1986 amendment to the Dramshop Act precluded her action against Casey's, (2) in holding that a parent may not recover for loss of consortium under the Dramshop Act, (3) in holding that the State is not liable for selling liquor to an intoxicated person, (4) in failing to recognize a common law tort holding sellers of intoxicants to intoxicated persons liable, and (5) in granting summary judgment in favor of the Middletons on the basis that consumption of intoxicants must occur to render the seller liable. We address these contentions in order.

I. *Effect of 1986 Amendment on Cause of Action Against Casey's.* In plaintiff's petition she alleged that Casey's "furnished beer, liquor, or both to Anthony Steven Vaughn to the point where Vaughn became intoxicated or while he was in an intoxicated state." In its motion to dismiss, Casey's noted that plaintiff's petition only spoke of furnishing beer rather than of serving it. Relying upon an amendment to Iowa Code section 123.92 (1985), the district court dismissed this action.

At the time of the accident, section 123.92 provided a right of action against any licensee "who shall *sell or give* any beer . . . to any such person while the person is intoxicated, *or serve* any such person to a point where such person is intoxicated. . . ." (emphasis added). In 1986, however, the legislature amended this section and made major changes. 1986 Iowa Acts ch. 1211, § 12 (codified at Iowa Code § 123.92 (1987)). It struck the language "sell or give" and replaced it with "sold and served." It also added a condition which required that the licensee "knew or should have known the person was intoxicated." *Id.*

One effect of the amendment is to require the injured person to prove not only that the beer was sold but that it was served as well. The plaintiff concedes that she cannot allege that Casey's, a convenience store, served beer to Vaughn. She claims, instead, that since the 1986 amendment does not apply to her cause of action which accrued in 1985, she need not allege that Casey's served the beer.

The district court concluded that the 1986 amendment applied to the case and dismissed plaintiff's action. The literal language of chapter 1211 supports the district court's decision. Section 47 of chapter 1211 indicates that the changes were to take effect two weeks from the date of their second publication, June 7, 1986. It

further provided that the chapter applies to all cases filed on or after July 1, 1986. Plaintiff's action, filed in 1987, did not meet the legislatively imposed deadline.

Plaintiff attacks the applicability of the 1986 amendment by urging (1) that the amendment should be construed to apply only to causes of action which accrued after the amendment's effective date, and (2) that the legislature may not constitutionally deprive her of her accrued cause of action. We examine these contentions in turn.

A. *Statutory Construction.* Plaintiff urges that there is a conflict between applying section 47 of chapter 1211 to all cases filed on or after July 1, 1986, and Iowa Code section 4.13(2) (1985) which provides that the amendment of a statute does not affect any right or liability previously accrued. We find no merit in this contention. Section 4.13(2) is a general statute, while section 47 is a specific provision. If the conflict between the provisions is irreconcilable, the special provision prevails as an exception to the general one. Iowa Code § 4.7 (1985).

B. *Due Process.* Plaintiff maintains that the trial court ruling violated the federal and state due process clauses. The fourteenth amendment to the U.S. Constitution prohibits any state from depriving any person of property "without due process of law." Similarly, article 1, section 9 of the Iowa Constitution provides that "no person shall be deprived of ... property without due process of law." Plaintiff maintains that prior to the amendment, she had a vested right in the dramshop action without the necessity of proving that Casey's served beer to Vaughn. She maintains that the retroactive requirement of proof of serving destroyed her cause of action and was, therefore, an illegal taking of property.

We first examine whether her right to file a law suit prior to the amendment was a vested right. Casey's cites *Schwarzkopf v. Sac County Board of Supervisors*, 341 N.W.2d 1, 8 (Iowa 1983), for the proposition that plaintiff has no vested right in a particular result of litigation. We indicated in

*Schwarzkopf* that a vested right requires something more that a mere expectation based on the anticipated continuance of present law, and that the right or interest must be fixed or established before it is considered vested. *Id.*

Initially, we believe that plaintiff's dramshop action was an accrued and vested right prior to the 1986 amendment. It was more than an expectation that the law would not change. In *Schwarzkopf* our statement that a party has no vested right until final judgment was based upon the fact that the suit was in equity and triable *de novo* before the Supreme Court. 341 N.W.2d at 8. This is distinct from the case at bar where a cause of action at law accrued when the plaintiff was injured.

In defining an accrued claim in the context of Iowa Code sections 4.1(1) and 4.13, we held that a claim for reimbursement for old age assistance against a decedent's estate accrued on the recipient's death, when the statute of limitations began to run. *In re Estate of Hoover*, 251 N.W.2d 529, 531 (Iowa 1977). We stated:

> "Accrue" with reference to a cause of action, was defined by the Oregon Supreme Court in *Berry v. Branner*, 245 Ore. 307, 312, 421 P.2d 996, 998 (1966) to mean "when an action may be maintained thereon." In *Blacketer v. State*, 485 P.2d 1069, 1070 (Okla.Ct.Cr.App. 1971) an "accrued" right was defined as "a matured cause of action or legal authority to demand redress."

*Id.* In determining when a statute of limitations begins to run, we held that the cause of action accrues when an aggrieved party has a right to institute and maintain a suit. *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 463 (Iowa 1984); *Connelly v. Paul Ruddy's Equip. Repair & Serv. Co.*, 388 Mich. 146, 151, 200 N.W.2d 70, 72 (1972) (tort actions accrue when all elements of the cause of action have occurred).

Other jurisdictions have indicated that once a cause of action accrues, the injured person's interest in the cause of action vests.

It is well-settled that the legislature may not extinguish a right of action which has already accrued to a claimant. "There is a vested right in an accrued cause of action .... A law can be repealed by the law giver; but the rights which have been acquired under it, while it was in force, do not thereby cease ...."

*Gibson v. Commonwealth*, 490 Pa. 156, 161, 415 A.2d 80, 83 (1980) (quoting *Lewis v. Pennsylvania R.R.*, 220 Pa. 317, 324, 69 A. 821, 823 (1908)); *see also Stucki v. Loveland*, 94 Idaho 621, 623 n. 10, 495 P.2d 571, 573 n. 10 (1972) (accrued statutory right is a vested right); *In re Dance's Estate*, 16 Ill.App.2d 122, 130, 147 N.E.2d 385, 390 (1958) (cause of action for wrongful death becomes vested upon death of decedents); *Campbell v. City of Detroit*, 51 Mich.App. 34, 38, 214 N.W.2d 337, 339 (1974) (citing *Minty v. Board of State Auditors*, 336 Mich. 370, 390–91, 58 N.W.2d 106, 111–12 (1953)) (accrued statutory right of action is a vested right); *Berry v. Beech Craft Corp.*, 717 P.2d 670, 676 (Utah 1985) (cause of action accrues and vests when rights are injured); *Hunter v. School Dist. of Gale-Ettrick–Trempealeau*, 97 Wis.2d 435, 443, 293 N.W.2d 515, 519 (1980) (action accrues and plaintiff acquires a vested right in a cause of action on the date of injury). *Cf. Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn.1978) (claimant who filed a claim with administrative agency had a vested right in cause of action).

▇ Casey's argues, however, that until there is a final judgment, the plaintiff has no vested property right and that the legislature is therefore free to make any changes in the statutory remedy afforded under Iowa Code section 123.92 without constitutional scrutiny. We would agree with this argument if all the legislature did was change the legal machinery by which the substantive law is enforced or made effective. In other words, a change in the statute which merely affects the remedy or the procedural law can constitutionally apply retroactively to causes of action which vested before their enactment. *Appleby v. Farmers State Bank of Dows*, 244 Iowa 288, 293, 56 N.W.2d 917, 920 (1953).

Casey's cites *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 492 (Iowa 1985) for the proposition that due process is not violated by the retroactive application of a newly enacted statute, Iowa Code section 668.4 (1985), which discontinued unlimited joint and several liability in tort cases. Section 668.4, however, did not work a substantive change in the law. Plaintiffs still had a cause of action against all the same tortfeasors; the burdens of proof had not been altered. The new law simply changed the ability of plaintiffs to recover the entire judgment from one defendant, if that defendant was found to be less than fifty percent at fault.

The same analysis is equally applicable to another case relied upon by Casey's. *Berg v. Berg*, 221 Iowa 326, 264 N.W. 821 (1936). In *Berg* the legislature postponed the enforcement of mortgage judgments for two years and retroactively applied this delay to judgments obtained prior to the act's passage. In determining that this was not a violation of due process, we recognized that a citizen does not have a vested property right in a remedy such as a specific statute of limitations. *Id.* at 330–31, 264 N.W. at 824. The postponement of the debt collection in no way altered the plaintiff's substantive right to receive the money judgment.

However, a statutory amendment that takes away a cause of action "that previously existed and does not give a remedy where none or a different one existed previously" is substantive, rather than merely remedial, legislation. *Vinson v. Linn–Marr Community School Dist.*, 360 N.W.2d 108, 121 (Iowa 1984); *see Pfiffner v. Roth*, 379 N.W.2d 357, 359 (Iowa 1985). Substantive law is "that part of the law which creates, defines, and regulates rights." *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 560, 149 N.W.2d 789, 791 (1967). In *Pfiffner* we held that the 1984 amendment to Iowa Code chapter 553, which provided an exception for cities where none existed before, would have to be considered a substantive change. 379 N.W.2d at 359. The plaintiff had a right of recovery against the city under the old law but would have none after the enactment

of the amendment. We noted that we ordinarily will not give retrospective effect to an amendment when it has that result. *Id.* at 360; *Vinson,* 360 N.W.2d at 121.

■ The effect of the 1986 amendment to the Dramshop Act requiring that the seller of intoxicants also serve them is to preclude plaintiff's cause of action against a convenience store that only sells beer. By applying the principles of *Pfiffner* and *Vinson,* we must conclude that the 1986 amendment works a substantive change in the law. Section 47 of the amendment provides retroactive application of this change to existing causes of action not filed by July 1, 1986 and accordingly eliminated plaintiff's action filed later. The issue is whether this deprivation violates principles of due process.

The Michigan court was faced with a similar situation in *Koehler v. DRT Sport-Service, Inc.,* 55 Mich.App. 567, 223 N.W.2d 461 (1974). In *Koehler* the legislature had enacted an amendment to their dramshop statute which deprived the plaintiff of his cause of action after his injury had occurred. The Michigan court held that due process prevented the legislature from retroactively amending the act so as to deprive the plaintiff of his previously accrued cause of action. *Id.* at 465.

Even remedial statutes have been found to violate due process when applied retroactively to remove vested rights. The Supreme Court has indicated that a legislature does not exceed its authority when it alters a remedy as long as it does not violate a vested right and "leaves the parties a substantial remedy." *Ettor v. Tacoma,* 228 U.S. 148, 156, 33 S.Ct. 428, 430, 57 L.Ed. 773, 778 (1913). In *Ettor* the state of Washington had a statute requiring cities to compensate the abutting owners for a change in the grade of the street. The city of Tacoma changed the grade of the street but refused to pay damages when the Washington legislature amended the statute retroactively. The Court held that the obligation of the city was fixed and that the effect of the repealing act was to deprive the plaintiff of property without due process of law. *Id. See also Gibbes v.*

*Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342, 347 (1933) (due process guarantees preservation of plaintiff's "substantial right to redress by some effective procedure").

The retroactive application of the 1986 amendment deprived plaintiff of all redress against such dramshops as Casey's which do not sell and serve beer. This, therefore, was a substantial reduction in the total remedies available to plaintiff against sellers of beer and liquor to intoxicated persons and as such deprived her of her vested cause of action without due process of law. "It is well settled ... that ... it is not competent for the legislature to cut off all remedy and that the right to sue within the existing statute of limitations is property, which cannot be thus summarily destroyed." *Thoeni v. City of Dubuque,* 115 Iowa 482, 484, 88 N.W. 967, 968 (1902).

Certain categories of retroactive legislation have, however, survived constitutional scrutiny despite depriving plaintiffs of vested causes of action. One such category is curative acts.

A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities which in the absence of such an act would be void for want of conformity with existing legal requirements.

2 N. Singer, *Sutherland Statutory Construction* § 41.11, at 410 (4th ed. 1986). There is no question that a legislature has the power to retroactively cure defects in existing statutes. *See City of Muscatine v. Waters,* 251 N.W.2d 544, 548–49 (Iowa 1977).

Casey's cites *Kemp v. Day & Zimmerman, Inc.,* 239 Iowa 829, 861, 33 N.W.2d 569, 586 (1948), for the proposition that we have consistently held that a statutory cause of action can be taken away after it has accrued or is being enforced. However, *Kemp* involved the application of the federal Portal–to–Portal Act of 1947, a curative statute which took away vested overtime compensation from employees. *Id.* at 829, 33 N.W.2d at 569. In *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680,

66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Supreme Court gave an expansive interpretation to the Fair Labor Standards Act, which exposed coal mine operators to potential liabilities in the billions of dollars. Subsequently, Congress passed the Portal–to–Portal Act which eliminated both the right to sue for overtime pay at issue in *Anderson* and the jurisdiction of the court to hear such claims. Our holding in *Kemp* was in accord with other jurisdictions that approved the retroactive application of this legislation.

Retroactive emergency legislation also tends to survive constitutional scrutiny. *See Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). The Court in *Lichter* upheld wartime measures allowing the war department to renegotiate contracts with private citizens to prevent those citizens from realizing excessive profits. *Id.* In determining that the renegotiation was not a deprivation of property without due process of law, the Court cited the emergency wartime conditions, the need to wage war effectively and the importance of preventing opportunities for individual profiteering. *Id.* at 754, 769, 780, 68 S.Ct. at 1301, 1309, 1314, 92 L.Ed. at 1709, 1717, 1723. Similarly, we have allowed the retrospective application of emergency legislation postponing the enforcement of mortgage judgments during the Depression. *Berg*, 221 Iowa at 331, 264 N.W. at 824.

In summary, the 1986 amendment that deprived plaintiff of her cause of action does not fall within those categories of curative or emergency legislation that involve an overriding public interest and which can constitutionally be applied retroactively. Neither do we believe that the legislation was merely a change in procedure or remedy. Rather, we believe that plaintiff had a vested property right in her cause of action against Casey's and that the retroactive application of the 1986 amendment destroyed that right in violation of due process under both the federal and state constitutions. "[T]he legislative power of a state can only be exerted in subordination to the fundamental principles of right and justice which the guaranty of due process in the Fourteenth Amendment

is intended to preserve." *Truax v. Corrigan*, 257 U.S. 312, 329, 42 S.Ct. 124, 128, 66 L.Ed. 254, 262 (1921). Our state due process protections also are grounded on principles of justice and fairness which preclude legislative changes that disturb the vested rights of its citizens. Consequently, we agree that plaintiff's contentions are supported by both the federal and state constitutions.

■ We only briefly address plaintiff's contentions that the 1986 amendment also violated due process when it gave plaintiff only 23 days in which to file her law suit. We have long held that the legislature may shorten the time after which an existing cause of action may be barred without violating due process, if a reasonable time is given for the commencement of the action before the bar takes place. *See, e.g., Brewer v. Iowa Dist. Ct. for Pottawattamie County*, 395 N.W.2d 841, 843 (Iowa 1986); *Swanson v. Pontralo*, 238 Iowa 693, 698, 27 N.W.2d 21, 24 (1947); *Berg*, 221 Iowa at 331, 264 N.W. at 824; *Wooster v. Bateman*, 126 Iowa 552, 554, 102 N.W. 521, 522 (1905); *accord California Employment Stabilization Comm'n v. Payne*, 31 Cal.2d 210, 215, 187 P.2d 702, 704 (1947); *Koehler*, 55 Mich.App. at 577 n. 4, 223 N.W.2d at 466 n. 4. We agree that 23 days is an unreasonable period of time and would violate due process without further discussion. The trial court, therefore, erred in holding that the 1986 amendment to the Dramshop Act applied to plaintiff's claim against Casey's.

■ II. *Parental Loss of Consortium.* The trial court did not have the benefit of our ruling in *Gail v. Clark*, 410 N.W.2d 662, 669 (Iowa 1987), when it ruled that counts two and three of plaintiff's petition sought damages that are not recoverable under Iowa Code section 123.92. In *Gail*, we held that a child's right to parental consortium is property within the meaning of the dramshop statute. *Id.* While plaintiff parent, in this case, seeks damages for the loss of her child's services, companionship and society, the same principles discussed in *Gail* apply. Accordingly, the dis-

trict court erred in dismissing plaintiff's loss of consortium claims.

III. *Claim against the State.* The portion of plaintiff's petition applicable to the State alleged that an employee of the state liquor store negligently and wrongfully sold a bottle of whiskey to an intoxicated patron, Anthony Vaughn, contrary to Iowa Code section 123.49(1) (1985). The State moved to dismiss, asserting that it had no duty under section 123.49(1) and that this section, as amended, exempts non-licensees and non-permittees from civil liability under the Dramshop Act. The trial court granted the State's motion to dismiss, relying upon perceived deficiencies in plaintiff's action against the State caused by the application of amended sections 123.49 and 123.92.

The plaintiff urges that the trial court mistook the nature of her action. She urges, and we agree, that she did not file a dramshop action under section 123.92. Rather, she sought relief on a common law theory of negligence grounded on the liquor store employee's violation of a criminal statute, section 123.49(1), which prohibits the sale of alcoholic liquor to an intoxicated person. She maintains that the State is liable for the negligent or wrongful acts of its employee pursuant to Iowa Code section 25A.2(5)(a) (1985). On appeal, the question is whether she has pled a viable cause of action against the State on a theory that the State is responsible for its employee's violation of section 123.49(1).

In our examination of this question, we give retrospective application to the 1986 amendment to section 123.49. 1986 Iowa Acts ch. 1211, § 11 (codified at Iowa Code § 123.49(1)(a) and (b)). As our result is favorable to the plaintiff, we do not address her constitutional due process claims concerning retrospective application. The State supports the court's dismissal on grounds that (1) the State is not a person under section 123.49(1) and consequently owes no duty under this section; (2) the State's employee is exempt from liability; and (3) section 123.49(1)(a, b) exempts the employee from liability and prevents plaintiff from proving causation. We address these contentions in turn.

A. *State's duty.* The State first contends that it cannot fall within the prohibitions contained in section 123.49(1) which states: "no person shall sell, dispense, or give to any intoxicated person, or one simulating intoxication, any alcoholic liquor or beer." We agree that the State is not a person under this section. *See also* Iowa Code section 123.3(10) (1985), now 123.3(11) (1989) (definition of a person).

However, plaintiff does not seek to hold the State liable for its own acts but for the act of its employee. Under the Iowa Torts Claim Act, the doctrine of respondeat superior is applicable to claims against the State based on the torts of state employees acting within the scope of their employment. *Graham v. Worthington,* 259 Iowa 845, 852–53, 146 N.W.2d 626, 640–41 (1966). The immunity of the state from suit and liability is waived to the extent provided in that Act. Iowa Code § 25A.4. Consequently, the State would be responsible for any negligent act of the state liquor store employee.

B. *Exemption.* The State urges that the state employee, who is not named as a defendant in this litigation, is exempt from suit and cannot be liable by operation of Iowa Code section 123.13 (1985). That section provides:

> No council member or officer or employee of the department shall be personally liable for damages sustained by any person due to the act of such member, officer, or employee performed in the reasonable discharge of the member's, officer's or employee's duties as enumerated in this chapter.

The State urges that the action of the state employee in selling alcoholic liquor to the intoxicated Vaughn falls squarely within this exemption from liability. It urges that even if the sale was wrongfully or negligently performed, it was performed in the reasonable discharge of the employee's duties.

We believe that the State's reliance upon section 123.13 does not give effect to the qualifying language "performed in the

reasonable discharge" of the employee's duties. The plaintiff's petition alleged that the employee made an illegal sale in violation of section 123.49(1). The term "reasonable" is inapposite with an illegal act. If this is proven, we do not believe that this could be a reasonable discharge of the employee's duties. In that event, the exemption from liability under section 123.13 does not apply.

C. *Effect of Section 123.49(1)(a), (b).* The State maintains that the plaintiff cannot rely upon a violation of section 123.-49(1) as a grounds for negligence because of the addition of subparagraphs (a) and (b). Section 123.49(1)(a), (b) provides as follows:

> a. A person other than a person required to hold a license or permit under this chapter who dispenses or gives alcoholic beverage, wine, or beer in violation of this subsection is not civilly liable to an injured person or the estate of the person for injuries inflicted on that person as a result of intoxication by the consumer of the alcoholic beverages wine, or beer.

> b. The general assembly declares that this subsection shall be interpreted so that the holding of *Clarks v. Mincks*, 364 N.W.2d 226 (Iowa 1985) is abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, wine, or beer rather than the serving of alcoholic beverages, wine, or beer as the proximate cause of injury inflicted upon another by an intoxicated person.

■ The State first claims that subparagraph (a) relieves the employee of liability for the selling of liquor, because the employee is not a licensee or permittee. While we agree that the state employee was not required to hold a license or permit, we otherwise disagree with the State's contention. The prohibition contained in section 123.49(1) is against a person who shall *"sell, dispense, or give to an intoxicated person,"* alcoholic beverages (emphasis added). The exemption provided in subparagraph (a) applies to a person "who dispenses or gives an alcoholic beverage"

and does not include a person who *sells* such a beverage. It appears the legislature intentionally deleted the term "sell" from subparagraph (a). In *Sawyer v. Frank*, 152 Iowa 341, 344, 131 N.W. 761, 762 (1911), we concluded that the legislature's use of the word "dispense" in the alternative with "sell" indicated that it did not intend "to describe an act which is included in selling but, on the contrary, that the word is used to describe an independent and distinct method of ... disposal of such liquors."

Subparagraphs (a) and (b) were added in 1986 in response to our decision in *Clark*, 364 N.W.2d at 231, which held that a social host could be liable for common law negligence arising from furnishing alcohol to an intoxicated person. *See Blesz v. Weisbrod*, 424 N.W.2d 451, 453 (Iowa 1988). Apparently the legislature did not intend to exempt from liability those who illegally sold alcohol.

■ The State also asserts that even if its employee was found to be negligent in selling liquor to an intoxicated person, there is no causal connection between his negligence and plaintiff's harm. The State relies upon subparagraph (b) for the proposition that the furnishing of alcoholic beverages to an intoxicated person can no longer be the proximate cause of plaintiff's injuries as a matter of law. We do not agree.

We indicated subparagraphs (a) and (b) were added to section 123.49 to abrogate the liability of social hosts for common law negligence caused by the illegal furnishing of intoxicants. *Blesz*, 424 N.W.2d at 452–53. In *Blesz* we stated that section 123.-49(1)(b) "cannot be read so broadly that it will preclude common law liability suits in all cases." *Id.* at 453. Since neither the State nor its employee is a social host, subparagraph (b) is inapplicable to this case.

In summary, we conclude that the district court erred in dismissing plaintiff's action against the State.

IV. *Common Law Cause of Action.* Even assuming, without deciding, that plaintiff's claim was properly preserved for

appeal, we need not decide whether this court should recognize a common law cause of action against licensees and permittees who sell intoxicants for off-premises consumption. Since we have decided that the 1986 amendments to the Dramshop Act are not applicable to plaintiff's cause of action against Casey's, this claim need not be addressed. Plaintiff's dramshop action usurps her common law action. *Snyder v. Davenport,* 323 N.W.2d 225, 227 (Iowa 1982).

V. *Proximate Cause.* Plaintiff's dramshop action against the operators of the Midway Cafe & Bar (Midway) is brought pursuant to section 123.92. Midway moved for summary judgment, maintaining that plaintiff could not prove that Vaughn consumed any alcoholic beverages purchased from Midway. From the affidavits and other evidence submitted to the court, a finding of fact could be made that Midway sold and served Vaughn a beer. Plaintiffs concede, however, that they cannot produce evidence that Vaughn consumed the beer before he left the bar. The district court granted defendant's motion for summary judgment, ruling that some consumption must take place to give rise to liability under the Dramshop Act. The court said that there was absolutely no evidence of any connection between Vaughn's intoxication and any act of these defendants.

In urging that the plaintiff prove a causal connection between the alcohol provided by the defendant dramshop and Vaughn's intoxication, the defendants rely upon *Pose v. Roosevelt Hotel Co.,* 208 N.W.2d 19 (Iowa 1973). In *Pose* the plaintiff sought damages against the bar based on the theories that intoxicants were sold to the wrongdoer while he was intoxicated or that he was served intoxicants to a point where he became intoxicated. We stated that it was necessary for the plaintiff "to plead and prove a causal connection between such person's intoxication at the time of commission of the act causing such injuries and the sale or gift of beer or intoxicating liquor to him by the licensee or permittee against whom recovery is sought." *Id.* at 30. Midway, and apparently the trial court, believe that there must be consumption of the sold beer to supply that causal connection.

Plaintiff points out that in a later opinion we took a less restrictive approach to causation. In speaking of *Pose* we stated:

Even this limited proximate cause requirement does not extend to a special situation. The statute, section 123.92, makes a special provision for situations where the patron, when served, is already intoxicated. In that special situation it is not necessary for the injured person to show the operator's act contributed to the intoxication. Furnishing liquor to the intoxicated person, in such a case, results in liability.

*Walton v. Stokes,* 270 N.W.2d 627, 628 (Iowa 1978). In response, Midway maintains that the above language is dictum. While the statement in *Walton* may not have been necessary to the result, we believe that it properly analyzes section 123.-92 as it existed then and now.

We conclude that the two distinct provisions in section 123.92 which provide liability require not only different proof, but a different showing of a causal connection with the injury. We do not dispute our holding in *Pose* that the wrongful conduct of providing intoxicants to a person to the point of intoxication requires a showing that the sale was a proximate cause of the person's intoxication at the time of the accident. *Pose,* 208 N.W.2d at 30. It is necessary to show that the sale and serving of the intoxicants caused the intoxication, and that the injury was done by the intoxicated person.

On the other hand, the plain words of the statute regarding serving to an intoxicated person do not require a showing that this caused or contributed to the drinker's inebriation. Liability is not grounded on a showing that this sale caused or contributed to the intoxication of the drinker who later caused the injury. To this extent, we decline to follow the broad language in *Pose* and adopt our later language in *Walton.* We believe that this interpretation falls within the scheme of section 123.92.

Consequently, we conclude that the portion of section 123.92 imposing liability for the sale and serving of alcoholic beverages to an intoxicated person does not require a showing that he subsequently consumed them. While we realize that this may seem a harsh result to dramshop operators whose patrons do not ultimately consume the alcohol they purchased, the purpose of at least this portion of the Dramshop Act was to impose strict liability for a tort that would be extremely difficult to prove by traditional methods. *Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807, 810 (Iowa 1987). While the 1986 amendments to the Dramshop Act have abolished strict liability for dramshop defendants, the act of selling and serving liquor to an intoxicated person is still serious enough to justify liability. We have stated that "Iowa's dramshop statute is intended to place a hand of restraint on persons permitted to sell liquor and should be construed liberally to discourage the selling of excess liquor." *Atkins v. Baxter*, 423 N.W.2d 6, 9 (Iowa 1988). *See Shasteen v. Sojka*, 260 N.W.2d 48, 50 (Iowa 1977); *Rigby v. Eastman*, 217 N.W.2d 604, 608 (Iowa 1974). Consequently, we reverse the ruling of the trial court which required that the plaintiff allege consumption to survive defendant's motion for summary judgment.

VI. *Summary.* In summary, we reverse all three rulings of the district court which dismissed plaintiff's action against Casey's General Stores, Inc., the State of Iowa, and Edward C. Middleton and Ruth M. Middleton. This action is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.