IOWA DEPARTMENT OF
TRANSPORTATION,
Plaintiff,

v.

IOWA DISTRICT COURT FOR
BUCHANAN COUNTY,
Defendant.

No. 97–2100.

Supreme Court of Iowa.

Dec. 23, 1998.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Mark Hunacek, Assistant Attorney General, for plaintiff.

Denny Wilson, Independence, for defendant.

TERNUS, Justice.

The Iowa Department of Transportation (DOT) filed a petition for writ of certiorari, challenging the district court's order restoring Edward Kayser's eligibility for a driver's license. The DOT claims the court acted illegally because the statute authorizing the court's action, Iowa Code section 321J.4(3)(b) (1995), had been repealed prior to the court's order. We conclude the district court lacked authority to restore Kayser's license eligibility. Therefore, we sustain the writ.

I. *Background Facts and Proceedings.*

The defendant in the underlying criminal case, Edward Kayser, was convicted of third-offense operating while intoxicated (OWI). *See* Iowa Code § 321J.2. As a result, his driver's license was revoked for six years. *See id.* § 321J.4(3)(a). The period of revocation commenced on September 29, 1995.

At the time of Kayser's license revocation, Iowa Code section 321J.4(3)(b) provided an opportunity for a defendant in Kayser's position to have his eligibility for a driver's license restored before the expiration of the six-year revocation period:

> After two years from the date of the order for revocation, the defendant may apply to the court for restoration of the defendant's eligibility for a motor vehicle license. The application may be granted only if all of the following are shown by the defendant by a preponderance of the evidence: . . . .

*Id.* § 321J.4(3)(b). The statute listed four conditions for restoring eligibility: (1) completion of an evaluation for chemical dependency and a treatment program, if recommended; (2) the absence of any convictions under section 321J.2 and of any chemical test indicating an alcohol concentration of .10 or more; (3) abstinence from excessive consumption of alcohol and consumption of controlled substances; and (4) no current license suspension or revocation for any other reason. *See id.* § 321J.4(3)(b)(1)-(4). During the 1997 legislative session, section 321J.4(3)(b) was repealed, effective July 1,

1997. *See* 1997 Iowa Acts ch. 177, § 9; Iowa Code § 3.7(1).

On October 17, 1997, Kayser filed an application with the district court asking that his eligibility for a driver's license be restored. After hearing, the district court, relying on the authority of section 321J.4(3)(b), granted the application. The district court rejected the State's argument that the repeal of section 321J.4(3)(b) prevented the court from granting Kayser's application. The court ruled that Kayser's "entitlement to restoration of driving privileges was incurred or accrued under section 321J.4(3)(b) before the statute was repealed" and consequently, Kayser's "entitlement" was preserved by Iowa's general savings statute, Iowa Code section 4.13.

The DOT filed a petition for writ of certiorari, claiming the court acted illegally in ordering the restoration of Kayser's eligibility for a driver's license. We granted the DOT's petition and now consider whether the repeal of section 321J.4(3)(b) affected the district court's authority to grant Kayser's application.

## II. *Scope of Review.*

■ Our review is for errors of law. *See Hewitt v. Iowa Dist. Ct.,* 538 N.W.2d 291, 292 (Iowa 1995). "We will sustain a writ of certiorari where the district court acted beyond its authority or jurisdiction." *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Bremer County,* 534 N.W.2d 457, 459 (Iowa 1995).

## III. *Applicability of Act Repealing Section 321J.4(3)(b).*

■ As previously noted, the district court relied on Iowa Code section 4.13(2) in concluding that the repeal of section 321J.4(3)(b) did not deprive it of authority to restore Kayser's eligibility for a driver's license. Section 4.13(2) provides that "[t]he ... repeal of a statute does not affect ... [a]ny ... right [or] privilege ... previously acquired, accrued, [or] accorded ... thereunder...." Thus, for purposes of this case, section 4.13(2) saves only (1) a right or privilege (2) that was acquired, accrued or accorded under the repealed statute before the effective date

of the repeal. We think Kayser has failed to meet the second prerequisite.

*A. Right or privilege.* Our analysis necessarily starts with an identification of the right or privilege that is accorded by section 321J.4(3)(b). This statute provided an opportunity for a defendant to have his "eligibility for a motor vehicle license" restored. Iowa Code § 321J.4(3)(b). Thus, the object sought by Kayser under section 321J.4(3)(b) is his eligibility for a driver's license. We assume for purposes of our discussion that Kayser's license eligibility is a privilege within the meaning of section 4.13. *Cf. State v. Baudler,* 349 N.W.2d 493, 496 (Iowa 1984) (holding a driver's license is a privilege, not a right). Thus, we now consider the second requirement of section 4.13(2).

*B. Acquired, accrued or accorded.* Section 4.13(2) applies only to rights or privileges that had been "acquired, accrued, [or] accorded" before the statute was repealed. Iowa Code § 4.13(2). In interpreting this statute, we give the words used in section 4.13(2) their common, ordinary meaning. *See Gerst v. Marshall,* 549 N.W.2d 810, 814 (Iowa 1996).

■ The word "acquire" is defined as "to come into possession, control or power of." *Webster's Third New International Dictionary* 18 (unabr. ed.1993). The word "accrue" is defined as "to come into existence as an enforceable claim : vest as a right." *Id.* at 13. Finally, the word "accord" is defined as "to grant as suitable or proper : render as due ... ALLOW." *Id.* at 12. Using the common meaning of these terms, we conclude that one relying on section 4.13(2) must demonstrate that the privilege he seeks to save is one that he possessed, or that had vested, or that had been granted prior to the date the statute providing such a privilege was repealed.

It is obvious that Kayser did not possess nor had he been granted eligibility for a driver's license as of July 1, 1997. In fact, that is the very privilege which he *now* seeks to acquire in this action. As of July 1, 1997, Kayser merely possessed an expectation that his eligibility would be restored *in the future* upon his *future* compliance with the conditions set forth in section 321J.4(3)(b). There-

fore, the repeal of section 321J.4(3)(b) did not deprive him of a "previously acquired [or] accorded" privilege to have his eligibility for a driver's license restored.

■ Nor, as our prior cases demonstrate, had this privilege accrued prior to July 1, 1997. In *Eldridge City Utilities v. Iowa State Commerce Commission,* 303 N.W.2d 167 (Iowa 1981), we considered whether the right of a city-owned utility to purchase a utility serving annexed territory survived the repeal of the statute providing for such a purchase. In that case the statute stated that a non-franchised public utility serving the annexed territory "shall be purchased at the end of six years ... by the [city's utility]." *Eldridge,* 303 N.W.2d at 169 (quoting Iowa Code § 490A.23 (1975)). While this statute was in effect the City of Eldridge annexed territory served by a non-franchised utility. *Id.* Within six years of the annexation, the legislature repealed the statute providing for the buy-out. *Id.* Thereafter, the city-owned utility attempted to purchase the utility serving the annexed territory. *Id.* We held the city utility had no buy-out rights under the repealed statute. *Id.* at 171.

■ In reaching this conclusion, we first noted the general rule that a repeal of a statute destroys the effectiveness of the statute and the repealed statute "is considered as if it had never existed." *Id.* at 169 (quoting C. Sands, *Sutherland Statutory Construction* § 23.33 (4th ed.1972)); *accord* Norman J. Singer, *Sutherland Statutory Construction* § 23.33, at 424 (5th ed. 1992) ("Except as to proceedings past and closed, the statute is considered as if it had never existed."). We noted in *Eldridge* that this rule is moderated, however, by our savings statute, section 4.13. *Id.* We then considered whether the city utility had a right under the repealed statute that was saved by section 4.13(2). *Id.* at 170. We concluded the buy-out provisions of the repealed statute "amounted only to an expectation until the six-year period had expired." *Id.* at 171.

The same analysis applies here. Kayser's privilege to have his license eligibility restored amounted only to an expectation until the two-year period had expired *and* he had

met the four conditions set forth in section 321J.4(3)(b).

Our holding is consistent with the historical distinction between a right/privilege and a mere expectation. In an early case, this court observed that a right "is something more than a mere expectation based upon an anticipated continuance of present laws." *Leach v. Commercial Sav. Bank,* 205 Iowa 1154, 1165, 213 N.W. 517, 521 (1927). We quoted from a United States Supreme Court case noting the distinction between a vested right, i.e., one that had accrued, and a right that is merely expectant or contingent:

> They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed....

*Id.* at 1165, 213 N.W. at 522 (quoting *Pearsall v. Great N. Ry.,* 161 U.S. 646, 673, 16 S.Ct. 705, 713, 40 L.Ed. 838, 847 (1896)).

In the present case, it is clear that Kayser's privilege to have his eligibility restored had not accrued when section 321J.4(3)(b) was repealed. The restoration of his eligibility was contingent not only on the expiration of two years from the revocation of his license, but also on his compliance with the conditions set forth in the statute as of the date of the hearing on his application. *See* Iowa Code § 321J.4(3)(b)(1)-(4) (requiring defendant to prove the prerequisites for license eligibility "by a preponderance of the evidence"). For example, Kayser could not meet the statutory conditions for restoration of his eligibility unless he abstained from the excessive consumption of alcohol and the consumption of controlled substances. *See id.* § 321J.4(3)(b)(3). If, between July 1, 1997, and the date of any hearing on Kayser's application, he used a controlled substance, he would not qualify to have his eligibility for a driver's license restored. Thus, as of July 1, 1997, the effective date of the repeal, it

was unknown whether Kayser would meet this requirement because meeting this requirement depended on "an event or condition which may not happen." *See Pearsall,* 161 U.S. at 673, 16 S.Ct. at 713, 40 L.Ed. at 847. It is this fact that distinguishes this case from those in which we have found the existence of an accrued right.

In *Thorp v. Casey's General Stores, Inc.,* 446 N.W.2d 457 (Iowa 1989), and *In re Estate of Hoover,* 251 N.W.2d 529 (Iowa 1977), we held that the plaintiffs' causes of action had accrued prior to the repeal of the pertinent statutes. In so holding, we relied on the fact that everything that would establish the plaintiffs' rights to recover had occurred prior to the repeal of the statutes. *Thorp,* 446 N.W.2d at 460; *Hoover,* 251 N.W.2d at 531. All that remained to happen was for the plaintiffs to prove these elements in court. In contrast, in the present case, the "elements" of Kayser's "claim"—passage of two years from revocation and meeting the statutory prerequisites—had not yet transpired as of the date section 321J.4(3)(b) was repealed. Consequently, in contrast to the plaintiffs in *Thorp* and *Hoover,* any privilege Kayser had under the statute to have his license eligibility restored had not yet accrued and was merely contingent.

In summary, we hold that the repeal of section 321J.4(3)(b) did not affect any right or privilege that Kayser had "previously acquired, accrued, [or been] accorded" by that statute. *See* Iowa Code § 4.13(2). Therefore, section 4.13(2) does not apply and we must follow the general rule that the repeal of a statute destroys its effectiveness. Accordingly, Kayser cannot rely on section 321J.4(3)(b) to shorten the six-year revocation of his driver's license.

IV. *Disposition.*

The district court acted beyond its authority in restoring Kayser's eligibility for a driver's license. Therefore, we sustain the writ of certiorari.

**WRIT SUSTAINED.**

All justices concur except SNELL, J., who concurs specially and CARTER, J., who dissents.

SNELL, Justice (concurring specially).

I concur in the result decided by the majority but respectfully disagree with the analysis by which it is reached. In *Iowa Department of Transportation v. Iowa District Court for Scott County,* 587 N.W.2d 781 (Iowa 1998), also filed this month, I set out my views in dissent concerning the effect of the legislature's repeal of Iowa Code section 321J.4(3)(b) (1995). Applying that analysis to the case at bar, I would sustain the writ of certiorari.

This case differs from the Scott County case in this way. In the Scott County case, the defendants qualified under the 1995 statute to have their cases heard by the district court, which would then determine if their driver's licenses should be restored. That is because the two-year waiting period required by section 321J.4(3)(b) had expired, making them eligible to apply for restoration of their driver's licenses. The court might not grant their applications because of failure to prove that the four conditions for restoration had been met, but their right to apply was unaffected by repeal of the statute because it was an accrued substantive right that could not be taken away by the repeal.

In the case at bar, defendant Kayser is not in the same position as the defendants in the Scott County case. Kayser's license was revoked on September 29, 1995. Under the statute, Kayser became eligible to apply for license restoration after two years had expired from the date of his license revocation. That date was September 29, 1997. However, before that date, the statute under which Kayser was seeking relief was repealed, effective on July 1, 1997. The July 1, 1997 date of repeal foreclosed Kayser from applying for license restoration because he had not completed the two-year threshold waiting period established by the statute for eligibility.

I adhere to my analysis of these legal issues as set out in my dissent in the Scott County case. Following that reasoning, I would sustain the writ.

CARTER, Justice (dissenting).

I dissent because I believe that, at the time the six-year revocation took place, sec-

tion 321J.4(3)(b) accorded Kayser a right to apply for early reinstatement to a court with authority to grant early reinstatement. If the savings feature contained in section 4.13(2) is applied according to its own clear directives, the repeal of section 321J.4(3)(b) should not affect that preexisting right.