**ELDRIDGE CITY UTILITIES,**
**Cross-Appellant,**

v.

**IOWA STATE COMMERCE**
**COMMISSION, Appellant,**

**Iowa-Illinois Gas & Electric Company,**
**Cross-Appellant.**

**No. 64553.**

Supreme Court of Iowa.

March 18, 1981.

Patricia Rhodes Cepican, of McDonald, Stonebraker & Cepican, Davenport, for Eldridge City Utilities.

David R. Conn, Asst. Commerce Counsel, Des Moines, for Iowa State Commerce Commission.

Edward J. Hartman and Robert J. Haack, Davenport, for Iowa-Illinois Gas and Elec. Co.

Considered by HARRIS, P. J., and ALL-BEE, McGIVERIN, LARSON and SCHULTZ, JJ.

HARRIS, Justice.

The question is whether a statutory provision for transfer of utility property continued after the statute was repealed. The district court, overturning a determination by the commerce commission, held the provision did continue. We disagree and reinstate the decision of the commission.

Often a city annexes territory in which utilities previously had been provided by a utility company not franchised by the city. Conflicts are apt to occur in these circumstances over the future distribution of utilities in the annexed territory. Iowa has

treated the problem in varying ways. During a three-year period, from 1973 to 1976, a statute, section 490A.23, The Code, provided that, six years following the annexation, a franchised utility, or as in this case, a municipally owned utility, would "buy-out" the territory. Under the plan the city utility here would buy out the utility formerly serving the annexed area. The buy-out provision was as follows:

> In the event service is provided, in such extended area, at the time of the extension of the corporate boundaries, by a public utility which does not have a municipal franchise for such city or town, the facilities located within such extended area shall be purchased at the end of six years from the date the corporate boundaries shall have been extended by the franchise public utility of such city . . . or by the municipal utility serving such city . . . and the municipal franchise public utility or municipally owned utility shall furnish such service without interruption upon the acquisition thereof.

There were provisions not here involved for cases in which a dispute arose on the question of value of the facilities in the annexed territory.

In 1976 the legislature repealed the statute which provided the buy-out plan and replaced it with chapter 1200, Acts of the 66th G.A. Under the new plan the commerce commission holds the responsibility of determining in the public interest how the annexed territory is to be served and by what utility.

Following the repeal of the buy-out statute but within what would have been a six-year period following annexation of territory by the City of Eldridge, its own utility, Eldridge City Utilities (Eldridge), attempted to execute a buy out of the annexed territory from Iowa-Illinois Gas & Electric Company, which had been serving the annexed territory. Iowa-Illinois resisted on the claim that the buy-out provision terminated with repeal of the statute. Eldridge complained to the Iowa state commerce commission. The dispute was submitted to the commission under stipulated facts. The commission decided that the repeal of the statute cut off any six-year periods which had begun to run and that Eldridge had no buy-out interests under the statute.

A judicial review under section 17A.19(2), The Code 1979, was undertaken before the district court. The district court overturned the decision of the commission in the belief that the buy-out provision continued to exist for the six years following annexation, notwithstanding repeal of the statute. Iowa-Illinois and the commission have appealed. Although other questions have been raised on a cross-appeal by Eldridge, the entire controversy is controlled by our view of the effect of the repeal of the statute.

■ I. We can begin with a rubric of statutory construction:

> The effect of the repeal of a statute where neither a saving clause nor a general saving statute exists to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute, which, except as to proceedings past and closed, is considered as if it had never existed.

C. Sands, Sutherland Statutory Construction, § 23.33 (4th ed. 1972).

Eldridge claims, and the district court held, that this basic rule is obviated by our general statutory savings statutes.

Two savings statutes are relied upon. Section 4.1, The Code 1981, provides:

> The repeal of a statute, after it becomes effective, does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the statute repealed.

Section 4.13(4), The Code 1981, provides:

> The reenactment, revision, amendment, or repeal of a statute does not affect:
>
> . . . .
>
> Any investigation, proceeding, or remedy in respect of any privilege, obligation, liability, penalty, forfeiture, or punish-

ment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

Eldridge presents three alternative theories under these savings statutes. It argues: (1) a "proceeding" was undertaken with the annexation which persisted after repeal of the statute; (2) Eldridge had "rights" under the repealed statute which survived its repeal; and (3) "obligations" existed for the six-year period which caused the buy-out provision to survive. The district court subscribed to the first theory and held that Eldridge undertook a proceeding within the meaning of section 4.13(4) when it undertook annexation of the territory. Eldridge seeks an affirmance on the basis of all three theories.

■ II. We cannot agree that the provisions to buy out under the repealed statute were in the nature of a proceeding within the meaning of the savings statutes. It is true the provisions for buying out the facilities from the utility company previously serving the annexed territory were intended, under the repealed statute, to be mandated by virtue of an annexation. But they were not a part of the annexation proceeding. Here the Eldridge city council adopted a resolution to provide service by its utility to the customers in the annexed territory and gave notice of intentions to do so. The resolution and notice did not, however, amount to a buy-out proceeding. At the time, the resolution and notice were without legal significance because there were then no provisions for such resolutions or notice in the existing statute.

■ It is not altogether clear exactly what is required to constitute a proceeding within the meaning of a general savings statute but certainly more is required than what occurred here. Surely a proceeding could not exist here on an ex parte basis. *See generally* 82 C.J.S. Statutes § 440b at 1017. The district court relied, in finding a proceeding here, on the cases involving school districts, such as *State v. Klemme Community School District*, 247 Iowa 48, 72

N.W.2d 512 (1955). *Klemme* found a proceeding existed from the time a petition was filed as a prerequisite for a school reorganization. It stands only for the proposition that a proceeding commences only when a party takes some *required* step toward a desired result.

Black's Law Dictionary, Revised 4th Ed., at 1368, defines proceeding as follows:

In a general sense, the form and manner of conducting juridical business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment.

We generally think of a proceeding as a step taken by a suitor to obtain action by a court. *Murphy v. First National Bank of Chicago*, 228 N.W.2d 372, 377 (Iowa 1975); *Jensen v. Voshell*, 193 N.W.2d 86, 90 (Iowa 1971); *In re Estate of Lamm*, 246 Iowa 300, 304, 67 N.W.2d 613, 615 (1954).

■ Here no steps required by statute were taken by any party toward any decision by a court, agency, city, or group of voters until after the statute was repealed. The voluntary and unrequired resolution and notice did not dignify the situation into a proceeding within the meaning of the general savings statutes.

■ III. The general savings statutes also preserve vested rights of affected parties after a statute's repeal. Eldridge urges it had a vested "right" under the buy-out provision which it says could not be disturbed. The question then becomes whether the buy-out provision was a vested right or only an expectancy.

In arguing on appeal that no right was vested in Eldridge, the commission points to *Leach v. Commercial Savings Bank*, 205 Iowa 1154, 213 N.W. 517 (1927). There a surety claimed to be subrogated to a preferential right of the state in funds of an insolvent bank, even though that preferential right had since been abolished. We rejected the claim by finding the preference was not a vested right but a mere expectancy. We said:

[T]he discretion rested in the legislature to determine, as a matter of public policy, whether or not the state should have a preference in funds of an insolvent bank in the hands of a receiver . . . And when the legislature saw fit, in its wisdom, to change that public policy and withdraw its preference in such funds, no vested rights were invaded or affected.

205 Iowa at 1167, 213 N.W. at 522.

■ Similarly, the buy-out provision of the repealed statute here amounted only to an expectation until the six-year period had expired.

Eldridge believes that our holding in *Matter of Estate of Hoover*, 251 N.W.2d 529 (Iowa 1977), indicates a right was established here. *Hoover* dealt with a claim which accrued to the department of social services "on the death of a person receiving assistance." While the statute was in effect Hoover died and the department filed a claim in probate. We held that, under these circumstances, with a right accrued and a proceeding commenced, the repeal of the statute giving rise to the claim did not defeat the department's claim. We relied on the general savings statute. *Hoover* is no authority for the situation here because Eldridge never had an enforceable interest to buy out prior to the repeal of section 490A.23. Under the clear wording of that section six years had to pass before the buy-out was to occur.

■ IV. Eldridge also argues that it was "obligated" to provide electric service in the annexed territory by reason of the language above quoted from section 490A.23. It argues that the general savings statutes specifically preserve obligations arising under repealed statutes, which indeed they do. The flaw in Eldridge's argument is that the repealed statute did not obligate the city until the end of the six-year buy-out period. It had no obligation at the time of the statute's repeal.

There was no proceeding, no right, or obligation to Eldridge at the time the statute was repealed. Hence the case falls outside the general savings statutes:

There can, in the nature of things, be no vested right in an existing law which precludes its repeal. It is therefore a well-established principle that legislative power includes the power to repeal existing laws, as well as the power to enact laws, subject, of course to constitutional restrictions and inhibitions, such as the prohibition against the extinguishment of vested rights which have been acquired under the former law, or the impairment of the obligations of a contract, or the denial of due process of law.

73 Am.Jur.2d, Statutes, § 378 at 502.

■ We conclude that the buy-out provision did not survive repeal of the statute. It was the legislature's intent to supplant the buy-out scheme in annexed territories and transfer all questions and decisions of service for annexed territories to the commerce commission under the new statute. The trial court erred in holding otherwise.

REVERSED.