**IOWA DEPARTMENT OF TRANSPORTATION, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR SCOTT COUNTY, Defendant.**

No. 97–1520.

Supreme Court of Iowa.

Dec. 23, 1998.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General and Mark Hunacek and Carolyn J. Olson, Assistant Attorneys General, for plaintiff.

David R. Treimer, Davenport, for defendant.

TERNUS, Justice.

The consolidated cases before the court present a slight variation on the facts presented in another case we decide today, *Iowa Department of Transportation v. Iowa District Court for Buchanan County*, 587 N.W.2d 774 (Iowa 1998). All three cases involve the impact of the repeal of Iowa Code section 321J.4(3)(b) (1995), which provided an opportunity for criminal defendants who suffered a six-year license revocation to have their eligibility for a driver's license restored after two years. The factual distinction between the two cases before us and the *Buchanan County* case is the timing of the expiration of the two-year waiting period required before a defendant may apply for restoration of license eligibility. In the *Buchanan County* case the two-year period expired *after* the repeal of section 321J.4(3)(b) became effective; here, the two-year period expired *before* the effective date of the repeal. Despite this factual distinction, we think our decision in the *Buchanan County* case is controlling. Therefore, we sustain the writs.

I. *Background Facts and Proceedings.*

Both defendants in the underlying criminal actions, Martin Garlock and William Einfeldt, were convicted of operating while intoxicated, third offense. *See* Iowa Code § 321J.2. As a result of these convictions, their driver's licenses were revoked for six years. *See id.* § 321J.4(3)(a). Garlock's revocation period commenced on October 12, 1993, and Einfeldt's revocation began on June 15, 1995.

At the time these revocation periods commenced, Iowa Code section 321J.4(3)(b) provided a means to reduce the period of revocation after two years of the six-year period had expired. Section 321J.4(3)(b) provided:

> After two years from the date of the order for revocation, the defendant may apply to the court for restoration of the defendant's eligibility for a motor vehicle license. The application may be granted only if all of the following are shown by the defendant by a preponderance of the evidence. . . .

The four statutory prerequisites to the restoration of license eligibility were (1) the completion of an evaluation for chemical dependency and treatment for such dependency, if recommended, (2) the absence of any operating-while-intoxicated convictions and of any chemical test showing an alcohol concentration over the legal limit, (3) the defendant's abstention from excessive alcohol consumption and the use of controlled substances, and (4) the absence of any suspension or revocation for any other reason. *See* Iowa Code § 321J.4(3)(b)(1)-(4). This statute was re-

pealed effective July 1, 1997. *See* 1997 Iowa Acts ch. 177, § 9; Iowa Code § 3.7(1).

Although the two-year waiting period required by section 321J.4(3)(b) expired for each defendant prior to July 1, 1997, they both filed applications to have their eligibility for a driver's license restored after the effective date of the repeal. Garlock's application was filed on July 25, 1997; Einfeldt's application was filed on July 31, 1997. The district court granted both applications and restored the defendants' eligibility for a driver's license.

We granted the petitions for writ of certiorari filed by the Department of Transportation (DOT) and consolidated the cases. The DOT claims on appeal that the district court had no authority to restore the defendants' license eligibility because the statute providing such authority had been repealed prior to the district court's orders. The defendants, who are defending the district court in this certiorari action, rely on the general savings statute, section 4.13. They first assert that they had an accrued right to a hearing to seek restoration of their driving privileges and that this right is saved by section 4.13(2). Alternatively, they argue that Iowa Code section 4.13(4) prevents the repeal of section 321J.4(3)(b) from affecting the "remedy" provided by the repealed statute. We consider the applicability of each statute separately.

## II. *Scope of Review.*

■ Our scope of review is for correction of errors of law. *See Hewitt v. Iowa Dist. Ct.,* 538 N.W.2d 291, 292 (Iowa 1995). "We will sustain a writ of certiorari where the district court acted beyond its authority or jurisdiction." *Iowa Dep't of Transp. v. Iowa Dist. Ct. for Bremer County,* 534 N.W.2d 457, 459 (Iowa 1995).

## III. *Applicability of Section 4.13(2).*

■ Iowa Code section 4.13(2) provides that "[t]he ... repeal of a statute does not affect ... [a]ny ... right [or] privilege ... previously acquired, accrued, [or] accorded ... thereunder...." We held in the *Buchanan County* case that this statute protected "only (1) a right or privilege (2) that was acquired, accrued, or accorded under the

repealed statute before the effective date of the repeal." 587 N.W.2d at 776. We concluded that the defendant in that case, who had filed his application for restoration of license eligibility after the repeal of section 321J.4(3)(b), had no accrued right to license eligibility, nor had such eligibility been acquired or accorded prior to the repeal of section 321J.4(3)(b). *Id.* at 777. Therefore, we held that section 4.13(2) did not apply.

The same reasoning applies to the two cases before us here. In both cases, the defendants filed their applications after the repeal of section 321J.4(3)(b). They had not acquired nor been accorded license eligibility prior to the statute's repeal. In addition, for the reasons explained in *Buchanan County,* the defendants had no accrued right or privilege to have their eligibility for a license restored prior to the repeal of section 321J.4(3)(b).

Although our discussion of section 4.13(2) might end here, the defendants in the present case are in a slightly different situation from the defendant in *Buchanan County* in that in the cases before us the two-year waiting period expired before July 1, 1997. Thus, the defendants here claim that as of July 1, 1997, they had an accrued right to a *hearing* to seek restoration of their eligibility for a driver's license.

We reject the argument that the "right" upon which we should focus for purposes of applying section 4.13(2) is the evidentiary hearing triggered by a section 321J.4(3)(b) application. A hearing on an application for restoration of license eligibility is meaningless unless the court has the authority to grant the application. In other words, the hearing is merely a procedural mechanism to obtain the ultimate goal of having one's eligibility for a driver's license restored. Thus, it is the latter that must be saved by section 4.13(2)—the defendants' eligibility for a driver's license—if they are to successfully defend the district court's action restoring their eligibility.

■ Even if we assume the hearing to be the proper subject of our analysis, section 4.13(2) is of no assistance to the defendants. That is because a litigant's interest in a

certain procedure is not an accrued right or privilege in the context of a savings statute. *See State ex rel. Buechler v. Vinsand,* 318 N.W.2d 208, 209–10 (Iowa 1982) (stating that savings statutes do not apply to procedural statutes; procedural statutes do not "create or take away vested rights"); *Denton v. Moser,* 241 N.W.2d 28, 31 (Iowa 1976) ("No one can claim to have a vested right in any particular mode of procedure for an enforcement or defense of his rights."); *Bascom v. District Ct.,* 231 Iowa 360, 362–63, 1 N.W.2d 220, 221 (1941) (same); *see also* 14 Uniform Laws Annotated *Model Statutory Construction Act* § 14 commentary at 405 (1990) (In commenting on prospective versus retrospective application of a statute, the commissioners state, "If a procedural statute is amended, the rule is that the amendment applies to pending proceedings as well as those instituted after the amendment."). Consequently, savings statutes do not apply to changes made in the procedure accorded a litigant. *See Buechler,* 318 N.W.2d at 209–10. Accordingly, section 4.13(2) does not apply to the hearing provided an applicant under section 321J.4(3)(b). We now consider the defendant's alternative argument.

### IV. *Applicability of Section 4.13(4).*

■ Section 4.13(4) provides that the repeal of a statute does not affect

> [a]ny investigation, proceeding or *remedy in respect of any privilege,* obligation, [or] liability . . .; and the investigation, proceeding, or remedy may be instituted, continued, or enforced . . . as if the statute had not been repealed. . . .

(Emphasis added.) The defendants argue that section 321J.4(3)(b) provided a remedy for the restoration of a defendant's driving privileges, and therefore section 4.13(4) saves that remedy. We think our decisions in *Eldridge City Utilities v. Iowa State Commerce Commission,* 303 N.W.2d 167 (Iowa 1981), and *Janda v. Iowa Industrial Hydraulics, Inc.,* 326 N.W.2d 339 (Iowa 1982), provide guidance in evaluating the validity of the defendants' arguments here.

The plaintiff in *Eldridge* claimed its suit was saved because the suit was a "proceeding" pursuant to the repealed statute within the meaning of section 4.13(4). 303 N.W.2d at 170. This court rejected the plaintiff's argument, concluding there was no "proceeding" to be saved by section 4.13(4) because "no steps required by the statute were taken by any party toward any decision by a court [or] agency . . . until after the statute was repealed." *Id.; accord Sams v. Ohio Bureau of Employment Servs.,* 10 Ohio App.3d 204, 461 N.E.2d 309, 311–12 (Ohio Ct.App.1983) (holding that Ohio statute identical to section 4.13(4) did not save former statute governing administrative appeals because the appellant's right to appeal, as well as the appeal itself, did not arise until after the effective date of the amendment to the statute). Stated differently, the mere ability to commence a proceeding *in the future* was not sufficient to trigger the savings statute.

If we analogize this reasoning to the present case, we must conclude that defendants had no "remedy" to be saved at the time section 321J.4(3)(b) was repealed. That is because they were not entitled to any remedy at that time; they merely had the expectation that *in the future* they would meet the prerequisites to obtain that remedy. Paraphrasing *Eldridge,* there was no "remedy" to be saved by section 4.13(4) because the "steps required by the statute [were not accomplished] until after the statute was repealed." *Eldridge,* 303 N.W.2d at 170.

The *Janda* case focused on the second part of the first phrase in section 4.13(4)—in respect of any . . . obligation [or] liability. 326 N.W.2d at 345. The dispute in *Janda* involved the appropriate interest computation on a judgment in a contract action. *Id.* at 341. The statute providing for interest on judgments was repealed after the plaintiff filed suit and replaced by a statute providing a more generous interest computation. *Id.* at 343. The trial court awarded interest under the statute in existence at the time the judgment was entered. *Id.* The defendant argued interest should be awarded under the statute that was in effect at the time the plaintiff's action was commenced. *Id.* The defendant relied, in part, on the language in section 4.13(4) that the repeal of a statute does not affect "[a]ny proceeding . . . in respect of any . . . obligation [or] liability." *Id.*

at 345. We held the statute did not apply because, as of the date of the repeal, the defendant had no "obligation" or "liability" to pay judgment interest since a judgment had not yet been entered. *Id.*

The position of the defendants here is defective for the same reason. As of July 1, 1997, they had no driving privileges, nor had any privilege of license eligibility yet accrued. *See Buchanan County,* 587 N.W.2d at 777. Therefore, they had no remedy "with respect to any privilege" within the meaning of section 4.13(4). Consequently, that statute cannot save the purported "remedy" provided by section 321J.4(3)(b).

An interpretation of section 4.13(4) other than the one we adopt here would render repeals a nullity. If the statute literally saves *any* remedy with respect to *any* privilege regardless of whether the party even had the privilege or was entitled to the remedy at the time of the repeal, then no repeal could effectively eliminate a remedy. That result certainly was not the legislature's intent in enacting section 4.13(4).

### V. *Disposition.*

Iowa's savings statute, Iowa Code section 4.13, does not apply under the facts before us. Therefore, the repeal of section 321J.4(3)(b) prior to the defendants' applying for restoration of their license eligibility deprived the district court of authority to grant their applications. Consequently, the DOT is entitled to the relief requested.

**WRITS SUSTAINED.**

All justices concur except CARTER and SNELL, JJ., who dissent separately.

CARTER, Justice (dissenting).

I dissent because I believe that, at the time the six-year revocation took place, section 321J.4(3)(b) accorded Garlock and Einfeldt a right to apply for early reinstatement to a court with authority to grant early reinstatement. If the savings feature contained in section 4.13(2) is applied according to its own clear directives, the repeal of section 321J.4(3)(b) should not affect that preexisting right.

SNELL, Justice (dissenting).

I respectfully dissent from the analysis and result reached by the majority. I believe the district court had jurisdictional authority to hear the defendants' cases which sought the restoration of their motor vehicle driving privileges. Therefore, I would annul the writ of certiorari by which the Iowa Department of Transportation challenges that authority and remand the cases to the district court for further proceedings.

The majority's analysis is flawed on several counts. It engages not in statutory construction but in statutory reconstruction. Iowa Code section 321J.4(3)(b) (1995), since repealed without any statutory language of explanation, deletion or addition of words, read as follows:

> *b.* After two years from the date of the order for revocation, the defendant may apply to the court for restoration of the defendant's eligibility for a motor vehicle license. The application may be granted only if all of the following are shown by the defendant by a preponderance of the evidence. . . .

A logical and procedurally correct reading of this statute contemplates a two-step procedure. First, the defendant "may apply." Second, the application "may be granted." The condition of the first step is that two years have passed from the date of the revocation order. The condition of the second step (the granting of the application to restore driving privileges) is proving to the district court by a preponderance of the evidence that four conditions have been met. No language in the statute suggests that the two steps merge or that the first step is a nugatory if all of the four conditions of the second step are not simultaneously met when the first step can be taken. Yet, the majority reads a two-step procedure as though it were one.

The majority's statutory reconstruction is accomplished as though a pair of scissors chopped out of the statute the following words: "The application may be granted." Thus, the majority has legislated a new statute now reading:

*b.* After two years from the date of the order for revocation, the defendant may apply to the court for restoration of the defendant's eligibility for a motor vehicle license ... only if all of the following are shown by the defendant by a preponderance of the evidence....

From this newly created statute the majority reasons that any remedy is unavailable to defendants because they were required and unable to have their cases commenced, presented and decided by the district court before July 1, 1997, when the repeal of the statute became effective. Such a construction of this statute strains to complicate a pretty simple, straightforward reading of the statute that was enacted to provide an avenue for hearing these cases. It effectively backs up the time at which the repeal takes effect, that is July 1, 1997, to more than two years prior, that being July 1, 1995, perhaps three years, since given the fact of court congestion, it could take a year or more to have a final decision on a defendant's application. This is done by the majority without an iota of instruction from the naked repeal of the statute as to what was the legislature's intent.

Moreover, in case the decision on defendant's applications was appealed or challenged, as here, awaiting the result of these events would mean, by the majority's interpretation, a further extension backwards in time from July 1, 1997, beyond the two-year waiting period, within which time all court work would have to be completed before July 1, 1997. The clear result of this analysis by the majority is that any defendant having a driver's license revocation dated July 1, 1995, and likely considerably before that, could have no right to a restoration under the 1995 statute, repealed as of July 1, 1997. This approach ignores the distinctions established by our case law and trivializes the difference between the right to have a case presented to a court and the discretion to grant relief accorded to the court by the statute.

The majority's analysis is further flawed by its labeling all law applicable in this case as "procedural only" and therefore rejecting out of hand all analysis that the legislature had granted a limited substantive right to defendants to have their cases heard after the vesting of that right by the passage of a two-year waiting period.

By another labeling sticker the majority calls the 1995 statute only an "expectation," a sort of "hope," granted by the legislature for restoration of a driver's license, but nothing that would ever give a defendant a substantive right that ever vested into a right to a hearing. Unless a defendant could prove all four conditions had been satisfied for a license restoration and the court work had all been completed by July 1, 1997, the defendant could apply for restoration of his or her driver's license but it would do no good. This view again is end-result oriented and gives no meaning to the language of the legislature that clearly gives defendants the right to apply for restoration of their motor vehicle licenses after the passage of two years.

By similar reasoning that all language of the statute is procedural in purpose, the majority gives short shrift to Iowa Code section 4.13, our savings statute, that preserves rights or privileges that have accrued prior to repeal of a statute and preserves remedies granted under a statute which is later repealed. The statute states:

The re-enactment, revision, amendment, or repeal of a statute does not affect:

1. The prior operation of the statute or any prior action taken thereunder;

2. Any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder;

....

4. Any investigation, proceeding, or remedy in respect of any privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

Despite the extremely broad language used in the savings statute, that saves accrued rights and remedies in respect of any privilege, the majority can find nothing here that allows defendants a right to a hearing.

The majority construes the right at issue here to be the right of a defendant to have his eligibility for a driver's license restored. This is where the majority's analysis goes astray under section 4.13(2). The true right at issue, as demonstrated by the clear language of section 321J.4(3)(b), is the right to apply to the court for consideration of the defendant's application, at which time the defendant would have to establish the four conditions required under section 321J.4(3)(b). Because the majority misdefines the right, it concludes that the defendants had no accrued right at the time of repeal because the four conditions necessarily could not be established until the hearing occurred.

Similarly, the majority misconstrues section 4.13(4) by requiring all steps needed to accomplish a remedy to be completed before the effective date of repeal of a statute. The thought process here is the same as applied to construe Iowa Code section 321J.4(3)(b), that all court proceedings must be done before July 1, 1997. But nothing in the language of section 4.13(4) states that such a consequence is required or even intimates it as a possibility. Nor do the cases cited aid this interpretation. The case of *Eldridge City Utilities v. Iowa State Commerce Commission*, 303 N.W.2d 167 (Iowa 1981), actually supports a contrary result. The case of *Janda v. Iowa Industrial Hydraulics*, 326 N.W.2d 339 (Iowa 1982), is a nonstarter and inapplicable since it pertained to the award of interest on a judgment that could only be awarded after a judgment was entered. The specific subject matter controlled this result.

A final flaw in the majority opinion comes from its cramped notion of what is meant by "remedy" in the savings statute, with no regard for its future application in litigation. The precedent here set that "remedy" is so circumscribed is startling. Its effect on civil litigation that has been commenced under a statute supporting it but is unfinished prior to the date of the statute's repeal may be devastating.

I believe the proper analysis of these issues as dictated by the statutory language of Iowa Code sections 321J.4(3)(b) and 4.13, and our case law, travels the following route.

## I. Background Facts and Proceedings

The defendants in the underlying criminal cases, Martin Garlock and William Einfeldt, both have incurred three lifetime convictions for operating while intoxicated. Following each defendant's most recent conviction, the district court revoked their driver's licenses for six years as required by Iowa Code section 321J.4(3)(a). The six-year revocation of Garlock's license commenced October 12, 1993, and Einfeldt's revocation began June 15, 1995.

On July 25, 1997, Garlock filed an application with the district court to have his driving privileges restored. Einfeldt filed an application on July 31, 1997. On the same day each application was filed, the Iowa District Court for Scott County issued an order granting the application and ordering the DOT to restore the defendant's driving privileges.

Thereafter, the DOT filed a petition for writ of certiorari in each case, challenging the legality of the district court's orders. The DOT contended the court was without authority to order restoration in these cases because the legislature repealed the statute allowing restoration effective July 1, 1997. 1997 Iowa Acts ch. 177, § 9. We granted the DOT's petitions and, in response to the DOT's motion, ordered that the cases be consolidated. Garlock and Einfeldt are here referred to as the defendants, even though the named defendant in this appeal is the district court which ordered the restorations.

## II. General Framework

A general rule of statutory construction provides that "repeal of a statute renders the rescinded act as if it never existed." *Women Aware v. Reagen*, 331 N.W.2d 88, 91 (Iowa 1983); *accord In re Estate of Hoover*, 251 N.W.2d 529, 530 (Iowa 1977). There are, however, several exceptions to this rule. These include a reenactment of the statute in substantially the same language, the protection of rights which became vested while the statute was in force, and the existence of a savings clause or a general statute limiting

the effect of the repeal. *Hoover*, 251 N.W.2d at 530.

There has been no reenactment of section 321J.4(3)(b), so that exception is inapplicable. The second exception, dealing with common-law vested rights, is also not applicable here. With regard to the third exception, the legislature did not include a specific savings clause when it repealed section 321J.4(3)(b). *See* 1997 Iowa Acts ch. 177, § 9. The defendants, however, rely on two sections from the Iowa Code chapter on rules of statutory construction as general statutes limiting the effect of the repeal, to bolster their claim that the restoration provision found in section 321J.4(3)(b) still applies to them because their right to a hearing accrued prior to the repeal.

Iowa Code section 4.1(26) provides:

> *Repeal—effect of.* The repeal of a statute, after it becomes effective, does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred or any proceeding commenced, under or by virtue of the statute repealed.

The defendants also rely on Iowa code section 4.13, entitled "general savings provision," set forth previously.

General savings statutes, such as those found in Iowa Code sections 4.1(26) and 4.13, are typically designed "[t]o alleviate the hardships and to rectify the injustices of the common-law rules of construction and interpretation as they prescribed the effect of the repeal of a statute." 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.37, at 432 (5th ed.1993) [hereinafter *Sutherland*]. Iowa follows the "more favored view" in its application of the savings provisions found in sections 4.1(26) and 4.13, which means construing the provisions not merely as "rules of construction to be applied only to resolve a question of the legislative intent," but as "positive legislation which should be given effect as though they were incorporated into every future enactment involving a substantive right." *Id.; see State ex rel. Ackerly v. Shepherd*, 202 Iowa 437, 439, 210 N.W. 476, 476 (1926).

We have limited the application of these statutory savings provisions in some instances, however. For example, we have held that section 4.1(26) does not apply when its "invocation would be inconsistent with legislative intent or repugnant to the statutory context." *Women Aware*, 331 N.W.2d at 91. Moreover, "these savings statutes merely declare a continuing legislative policy against release of accrued liabilities or extinguishment of accrued rights. They do not apply where a repealing statute expressly or by clear implication provides the contrary." *Id.* at 91–92.

Another limitation on the reach of statutory savings clauses such as Iowa Code sections 4.1(26) and 4.13, is that the clauses operate to save only substantive rights, not those that are merely remedial or procedural in nature. *Sutherland* § 23.37, at 432–33. If the right at issue is substantive in nature, the new statute or repeal cannot be applied retroactively. This is consistent with the general rule that statutes operate prospectively only. *See* Iowa Code § 4.5. Conversely, if a statute relates to remedy or procedure, it is typically applied both prospectively and retroactively. *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976), *overruled on other grounds by State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989).

Substantive law "is that part of the law which creates, defines and regulates rights." *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 560, 149 N.W.2d 789, 791 (1967) (citation omitted). Conversely, procedural law is "the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective." *Id.* at 560, 149 N.W.2d at 791. With regard to remedial statutes, the court in *Schmitt* adopted the following definition:

> One that intends to afford a private remedy to a person injured by the wrongful act. That is designed to correct an existing law, redress an existing grievance, . . . .

> A statute giving a party a mode of remedy for a wrong, where he had none, or a different one, before . . . .

A remedial statute is one which not only remedies defects in the common law but defects in civil jurisprudence generally.

*Id.* (quoting Black's Law Dictionary 1457 (4th ed.)) (emphasis removed).

If a statute is found to be substantive in nature, the inquiry ends and the new statute or repeal is applied prospectively only. *Sutherland* § 23.37, at 433. Merely determining that a statute is procedural or remedial in nature and "therefore deserving of a presumption of retrospectiveness," however, "is not conclusive of the underlying question whether the statute [should be] given retrospective application." *Limbrecht,* 246 N.W.2d at 333. The court in *Limbrecht* set forth three factors to be considered in further assessing legislative intent with regard to retrospective or prospective application of a statute: (1) the language of the act; (2) the manifest evil to be remedied; and (3) whether there was a previously existing statute governing or limiting the mischief which the new act is intended to remedy. *Id.*

### III. Case Law on Vested or Accrued Rights

There are several cases which discuss amendment or repeal of a statute and accrued rights. In *Women Aware v. Reagen,* the controversy revolved around the legislature's enactment of a six percent increase in aid to dependent children benefits to commence October 1, 1980. In August 1980, however, prior to the time the statute took effect, the governor directed a uniform budget reduction to avoid a state budget deficit. This necessitated an amendment to the statute which provided for the six percent increase. The portion providing for the increase was stricken and the amendment provided that the benefit schedule in place on June 25, 1980 "shall remain in effect for the fiscal year ending June 30, 1981." *Women Aware,* 331 N.W.2d at 89–90. Women receiving these benefits appealed, contending their right to the increase had accrued and therefore could not be taken away.

On appeal, we concluded that the legislative policy against extinguishment of accrued rights contained in the statutory savings clauses did not apply because the legislature specifically made the repeal retroactive and provided that the current schedule of benefits would remain in effect. *Id.* at 92. The opinion did not discuss whether the plaintiffs had an accrued right to the increase because the legislature's express mandate that the repeal apply retroactively resolved the issue. Logically, however, it appears that the plaintiffs' rights had not yet accrued because the benefit increase had not yet taken effect when the legislature repealed the statute.

In *Eldridge City Utilities v. Iowa State Commerce Commission,* 303 N.W.2d 167 (Iowa 1981), we concluded the city utility had no accrued rights under a statute that had been repealed. In *Eldridge,* the city utility attempted to buy out a utility operating in an area previously annexed by the city. The city utility argued it should be allowed to proceed under a statute enacted by the legislature in 1973, but repealed in 1976. Under the 1973 statute, six years following an annexation, a franchised utility, like the city utility in this case, could buy out the territory from the utility currently providing services. *Eldridge,* 303 N.W.2d at 168–69. In 1976 the legislature repealed the buy-out plan and replaced it with a new plan under which the commerce commission would determine in the public interest how the annexed territory was to be served and by what utility.

Following the repeal of the buy-out statute but within what would have been the six-year period following annexation under that statute, the city utility attempted to execute a buy-out of the territory from the current provider. The current provider resisted, arguing the buy-out option terminated upon repeal of the statute. The commerce commission concluded the repeal cut off any six-year periods which had begun to run and therefore, the city utility could not proceed with the buy-out. On judicial review, the district court overturned the commission's decision and the commission appealed. *Id.*

On appeal, we discussed the statutory savings provisions raised by the city utility. The city utility urged it had a vested right under the buy-out provision. We concluded that the city utility's interest in the repealed

provision was not a vested right, but only an expectancy. *Id.* at 170–71. We noted that the buy-out provision "here amounted to only an expectation until the six-year period had expired." *Id.* at 171. Because the six-year period had not expired at the time of the repeal, the city utility "never had an enforceable interest to buy out prior to the repeal." *Id.* This case holding that a six-year period had to expire before the buy-out provision vested is directly on point in the case at bar in that defendants' rights to a hearing vested as a substantive right after the two years ran from the date of their license revocations. It is no authority, as cited by the majority, for the proposition that there is no accrued right unless all steps required by the license restoration statute (section 321J.4(3)(b)) have been completed.

In *Hoover*, the Department of Social Services filed a claim against a woman's estate for old age assistance and medical assistance furnished to the woman and her predeceased husband pursuant to two Iowa statutes. Between the time the department filed the claim and the court acted on the claim, the legislature repealed the statutes allowing claims by the department. The district court concluded the repeal of the statutes did not void the departments claim. On appeal, we determined that the department's claim accrued "on the death of a person receiving or who has received assistance under this chapter," which was prior to the repeal. *Hoover*, 251 N.W.2d at 531 (citing Iowa Code § 249A.6 (1973)). We also noted that at the time the legislature repealed the statute, the department had already filed its claim. *See* Iowa Code § 4.1(26) (providing repeal does not affect a "proceeding commenced"). Thus, we concluded that the claim had accrued and was saved by the general savings provisions contained in sections 4.1(26) and 4.13. *Hoover*, 251 N.W.2d at 531.

In *Hoover*, we discussed the meaning of "accrue." We referenced cases from other jurisdictions when setting forth the proper meaning to be applied to the term as it appears in sections 4.1(26) and 4.13:

> "Accrue," with reference to a cause of action, was defined by the Oregon supreme court in *Berry v. Branner*, 245 Or. 307, 312, 421 P.2d 996, 998 (1966) to mean "when an action may be maintained thereon." In *Blacketer v. State*, 485 P.2d 1069, 1070 (Okla.Ct.Cr.App.1971) an "accrued" right was defined as "a matured cause of action or legal authority to demand redress."

*Id.*

In its reply brief, the DOT relies on this court's decision in *Welton v. Iowa State Highway Commission*, 211 Iowa 625, 233 N.W. 876 (1930), to support its claim that the defendants did not have an accrued right to a hearing. In *Welton*, we considered whether the plaintiff in an eminent domain action should be allowed to recover attorney fees when the legislature enacted a statute specifically prohibiting such awards after the action was filed but before trial and entry of judgment in favor of the plaintiff. The plaintiff raised the predecessor to Iowa Code section 4.1(26) in an attempt to preserve the attorney fee claim. *Welton*, 211 Iowa at 640–41, 233 N.W. at 884.

We first recognized the general rule that "except for authority given by statute, no recovery for attorney fees may be had." *Id.* at 640, 233 N.W. at 884. The opinion noted that the Code chapter governing condemnation of land for highways, the chapter applicable in the case, did not contain any provision for the assessment of attorney fees. *Id.* at 641, 233 N.W. at 884–85. Furthermore, we noted that prior to enactment of the new statute, we had "held that attorney fees are not taxable as a part of the costs in condemnation proceedings." *Id.* at 640, 233 N.W. at 884. We observed that the language of section 4.1(26) "does not protect a privilege, but only a right" and that "[n]o contract or vested right is here involved." *Id.* at 641, 233 N.W. at 885. This was so because even prior to the enactment of the new section, a plaintiff whose land was the subject of a condemnation action was not entitled to attorney fees. Therefore, the plaintiff never accrued any right which was taken away by the enactment of the new statute prohibiting the award of attorney fees. As we stated, "[t]he instant plaintiff is not entitled, as a matter of right, to attorney fees, and, as pointed out,

they constitute no part of just compensation, as that term is judicially interpreted." *Id.*

Although this case is somewhat helpful in determining what constitutes an accrued right, it does not particularly help the DOT. Even though *Welton* involved a statute which prohibited the use of a certain remedy or type of recovery, our court concluded that no vested rights had been upset because even prior to the enactment of the statute no right or remedy existed for the plaintiff. In the case at bar, a right to file an application for restoration previously existed, which the repeal of section 321J.4(3)(b) took away.

The factual scenarios in *Welton* and *Hoover* are quite similar. Both involved statutes which purported to take away a claim or right of recovery. The distinction between the two cases lies in the fact that prior to the enactment of the statute in *Welton* the plaintiff did not have a "right" to recover attorney fees while in *Hoover*, prior to the repeal of the statute, the defendants did have a "right" to attempt to recover funds spent for medical care.

Our decision in *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457 (Iowa 1989), is also helpful in determining whether the defendants had an accrued right, though it presents the issue in a slightly different context. In *Thorp*, the defendant and several others sold alcohol to a person who drove while intoxicated and caused an accident which killed plaintiff's son. At the time of the accident, in 1985, Iowa's dramshop law provided a right of action against any licensee who "sold or gave" alcohol to a person while they were intoxicated. An amendment to the statute in 1986 struck the sold or gave language and replaced it with language that required a plaintiff to prove the defendant "sold and served" the person alcohol. *Thorp*, 446 N.W.2d at 459. This amendment was fatal to plaintiff's claim against Casey's, a convenience store which only sold alcohol and did not serve it for consumption on the premises.

The amendment specifically provided that it would apply to all cases filed on or after July 1, 1986. Plaintiff filed her action in 1987. We rejected the plaintiff's argument that the savings clause in Iowa Code section 4.13 should apply. We found no merit in that contention because the amended statute specifically provided when it would take effect. *Id.* at 459–60. The plaintiff also raised constitutional claims, however, alleging that applying the statute to her claim violated the federal and state constitutions' due process clauses. As part of this inquiry, we considered whether the plaintiff's right to file a lawsuit had accrued prior to the amendment.

We relied on our decision in *Schwarzkopf v. Sac County Board of Supervisors*, 341 N.W.2d 1 (1983), for the framework to be utilized. In *Schwarzkopf*, a group of local residents opposed the formation of a local water association. To facilitate construction of a necessary pipeline, the board of supervisors granted certain easements to the association. The plaintiffs sued claiming that a curative act designed to grant authority for the easements and passed after the board granted the easements was unconstitutional because it took away accrued rights. We noted the general rule of validity for curative acts and discussed an argument by the plaintiffs that an exception to the general rule arises when the legislation deprives a party of "vested" rights. *Schwarzkopf*, 341 N.W.2d at 8. The opinion quotes the following test to be used in determining whether a right is vested:

> [A] right is not "vested" unless it is something more than a mere expectation, based on an anticipated continuance of present laws. It must be some right or interest in property that has become fixed or established, and is not open to doubt or controversy.

*Id.* (quoting *Leach v. Commercial Sav. Bank*, 205 Iowa 1154, 1165, 213 N.W. 517, 521 (1927) (citation omitted)).

Applying the test established in *Schwarzkopf*, we concluded in *Thorp* that the plaintiff's dramshop action was an accrued or vested right prior to the amendment. *Thorp*, 446 N.W.2d at 463. We noted prior cases which hold that a "cause of action accrues when an aggrieved party has a right to institute and maintain a suit." *Id.* at 460 (citing *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457, 463 (Iowa 1984)). We then

cited cases from other jurisdictions which hold that once a cause of action accrues, the interest in the cause of action vests.

## IV. Retroactive Application of the Repeal

The DOT also argues that even if the defendants did have an accrued right to a hearing, the legislature intended the repeal of section 321J.4(3)(b) to apply retroactively and therefore the savings clauses do not apply.

In *Thorp* we considered the issue of retroactivity after concluding that the plaintiff had a vested right in her cause of action. We noted that the legislature can apply retroactively changes in statutes which "merely affect[ ] the remedy or the procedural law." *Id.* at 461. Such changes can apply retroactively even to causes of action which vest before their enactment. In distinguishing between changes which merely affect the remedy or procedure and substantive changes, we discussed several prior cases. In *Baldwin v. City of Waterloo*, 372 N.W.2d 486 (Iowa 1985), our court considered a new statute which discontinued unlimited joint and several liability in tort cases. We found that the new statute was not a substantive change in the law because the plaintiffs still had a cause of action. *Baldwin*, 372 N.W.2d at 492. In *Thorp*, we noted that "[t]he new law [in *Baldwin*] simply changed the ability of plaintiffs to recover the entire judgment from one defendant, if that defendant was found to be less than fifty percent at fault." *Thorp*, 446 N.W.2d at 461.

In *Berg v. Berg*, 221 Iowa 326, 264 N.W. 821 (1936), our court considered a new statute which postponed the enforcement of mortgage judgments for two years and retroactively applied this delay to judgments obtained prior to the act's passage. Again, we found this was not a substantive change and thus could be applied retroactively because a citizen does not have a vested property right in a remedy such as a specific statute of limitations. *Berg*, 221 Iowa at 330–31, 264 N.W. at 824. Notably, the postponement of the collection did not alter the plaintiff's right to ultimately receive the money judgment.

After discussing these cases, the *Thorp* opinion notes that "a statutory amendment that takes away a cause of action 'that previously existed and does not give a party a remedy where none or a different one existed previously' is substantive, rather than merely remedial, legislation." *Thorp*, 446 N.W.2d at 461 (quoting *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 121 (Iowa 1984)); *see also Pfiffner v. Roth*, 379 N.W.2d 357, 360 (Iowa 1985) (finding that court will not ordinarily give retrospective effect to an amendment when it has the result of taking away a right of recovery); *Schmitt*, 260 Iowa at 560, 149 N.W.2d at 791 (noting that substantive law is "that part of the law which creates, defines and regulates rights").

The DOT claims that the repeal of section 321J.4(3)(b) is merely remedial and therefore can be applied retroactively to bar the defendants' applications. It cites *Emmet County State Bank v. Reutter*, 439 N.W.2d 651 (Iowa 1989), in support of this contention. That case involved a statutory amendment which required a mortgagee to offer the mortgagor the opportunity to repurchase foreclosed property before sale to a third party. The amendment took effect after the plaintiff bank acquired the land, but before it resold it to a third party. *Emmet*, 439 N.W.2d at 652. In our opinion, we utilized the analysis set forth in *Limbrecht*, discussed earlier, to determine whether the statutory amendment should be applied retroactively. In reaching our conclusion that the amendment at issue should be applied retroactively, we considered the language of the new legislation, the evil to be remedied and whether a previously existing statute governed or limited the mischief which the new legislation was intended to remedy. *Id.* at 654. The DOT cites the portion of the opinion discussing the second factor, the evil to be remedied, for the conclusion that the statute was "remedial" in nature. *Id.* at 654–55. However, we did not even address in *Emmet* whether the amendment was substantive or remedial in nature. Therefore, the DOT's reliance on *Emmet* is misplaced and cannot be used to support its contention that the statute repealed in the case at bar was remedial rather than substantive.

## V. Analysis

### A. Whether the Defendants Had an Accrued Right to a Restoration Hearing

The defendants contend that their right to a hearing on restoration of their driver's licenses accrued prior to the repeal of section 321J.4(3)(b). They maintain that once the mandatory two-year revocation period had passed, their right to a hearing accrued pursuant to Iowa Code sections 4.1(26) and 4.13.

Most of this court's prior decisions interpreting the term "accrued rights" are civil cases and thus discuss when a party's claim or cause of action accrued. *See, e.g., Thorp*, 446 N.W.2d at 460; *Hoover*, 251 N.W.2d at 531. The issue of when a criminal defendant's right to a restoration hearing vests is an issue of first impression. However, the defendants' situation can be likened to the situations analyzed in *Thorp* and *Hoover*. In both of those cases, we found that the parties' respective rights accrued when the party had a right to maintain suit or file a claim. In the defendants' cases, it is argued that their right to a hearing on restoration of their driver's licenses and the concomitant possibility of restoration accrued when they had a right to file a request for a hearing, similar to the right to maintain a suit or file a claim. Under this theory the defendants' rights would have accrued two years after the revocation of their driver's licenses. For defendant Garlock, this date was October 12, 1995, and for defendant Einfeldt, June 15, 1997. Both of these dates occurred before the effective date of the repeal of section 321J.4(3)(b).

Our decision in *Eldridge* is also helpful to the defendants' claims. In *Eldridge*, we concluded that the city utility's right to proceed under a statute had not accrued prior to the statute's repeal. *Eldridge*, 303 N.W.2d at 171. This was because the six-year waiting period prescribed by the statute had not expired. *Id.* (provision at issue "amounted only to an expectation until the six-year period had expired"). Logically, if the six-year period had passed prior to the repeal, the city utility would have had an accrued right to proceed under that provision. This factual scenario closely resembles the situation in the case at bar. However, in the case at bar,

the prescribed period under section 321J.4(3)(b) expired before the repeal. Therefore, under our holding in *Eldridge*, the defendant's rights had accrued at the time of the repeal and are eligible for saving under sections 4.1(26) and 4.13.

The plain language of the statute is also helpful to the defendant's argument. Before its repeal, section 321J.4(3)(b) provided in relevant part: "After two years from the date of the order for revocation, the defendant may apply to the court for restoration." This introductory language is similar to the statute at issue in *Hoover* in defining when the party may raise his or her claim with the court; in other words, when his or her right to do so accrues. It appears from the plain language of section 321J.4(3)(b) that the right of a defendant to apply for restoration of driving privileges "accrues" within the meaning of Iowa Code sections 4.1(26) and 4.13, "[a]fter two years from the date of the order for revocation." The defendants' rights in these cases were "more than a mere expectation, based on an anticipated continuance of present laws." *See Schwarzkopf*, 341 N.W.2d at 8 (citation omitted). They were rights that became "fixed or established" after the passage of two years. *See id.*

The DOT responds to this argument by alleging it was necessary for the defendants to actually *file* their requests for a hearing prior to the repeal in order for their rights to accrue. This contention is contrary to our holdings in *Thorp* and *Hoover*. In both of those cases, we did not find it necessary for the plaintiff or claimant to actually file their suit or claim prior to the date of repeal or amendment in order for the right to accrue. Our holding in *State ex rel. Ackerly v. Shepherd*, 202 Iowa 437, 210 N.W. 476 (1926), supports this conclusion as well. In *Ackerly*, the State filed suit attempting to obtain child support from the alleged father pursuant to a chapter of the Code that had been repealed. The defendant argued that because the claim for support was not enforced prior to the repeal of the statute, the claim was lost. *Ackerly*, 202 Iowa at 437–38, 210 N.W. 476. We noted that the child's right to support accrued upon its birth and that the failure to enforce that right prior to the repeal of the

statute did not render it unenforceable. "Such right having accrued, it was enforceable at any time. But the accrual of the right was not dependent upon its enforcement. The accrued right remained, though its enforcement [was] delayed." *Id.* at 439, 210 N.W. at 477. Therefore, even though both Garlock and Einfeldt waited for a period of time after their right to a hearing accrued to file an application for a hearing, that does not mean that their right to a hearing was lost.

The DOT also maintains that because the district court had discretion in determining whether to restore the defendants' driving privileges, the right defendants claim "is hardly the kind of absolute right which would be saved by the savings clauses of sections 4.1(26) or 4.13." Our decisions in *Thorp* and *Hoover* refute the DOT's claim that the defendant's rights to restoration must be absolute for the statutory savings clauses to apply. In both *Thorp* and *Hoover*, the plaintiffs' rights to recovery were not absolute. In *Thorp*, the plaintiff was still required to prove the elements of her claim; the court's finding that her right to file a claim had accrued prior to the statutory amendment merely allowed her to maintain her claim based on the old law. *See Thorp*, 446 N.W.2d at 467 (reversing district court's dismissal of claims against defendant). Similarly, in *Hoover*, our conclusion that the State had an accrued right to file a claim did not mean the State had an absolute right to recovery. The State was still required to prove its claim.

The DOT further argues that the option to file an application for restoration is not a "right," but merely a "privilege." In *Miller v. Hagemann*, 114 Iowa 195, 86 N.W. 281 (1901), our court considered whether the plaintiff could be charged property taxes when under a prior statute his property was entitled to an exemption. The plaintiff contended that the predecessor to Iowa Code section 4.1(26) applied to save his right to the exemption despite the subsequent repeal of the statute allowing the exemption. We found that the savings clause "was intended only to protect rights, not mere privileges." *Miller*, 114 Iowa at 201, 86 N.W. at 283. We

also noted that "there was no contract or vested right arising out of the previous statute" and that therefore, there was no right "which is preserved as against subsequent legislation." *Id.*

Although this case appears to cloud the defendant's argument, it is easily distinguished. The court in *Miller* found that the exemption claimed by the plaintiff was prospective in nature; the plaintiff was trying to maintain the exemption for future years, not attempting to claim an exemption which had already accrued for previous years. In the case at bar, the defendants are trying to claim a right which accrued prior to the repeal of the statute; it is not a prospective right which has not yet accrued. Furthermore, the only savings statute in existence at the time *Miller* was decided was the predecessor to section 4.1(26), which mentions only accrued rights. Section 4.13, enacted in 1971, provides for the preservation of not only accrued rights, but privileges as well.

The DOT finally argues that the right the defendants assert, the right to a restoration hearing, has not been denied by the repeal of section 321J.4(3)(b). The DOT maintains "[t]hey still have the right to apply for restoration" despite the fact that it is "essentially meaningless." This argument is so specious it deserves no credence. The right to apply for restoration necessarily entails the right to have that application considered and ruled upon by the district court pursuant to the rules set forth in section 321J.4(3)(b).

B. Whether the Savings Clauses of Iowa Code sections 4.1(26) and 4.13 Apply to Save the Defendants' Accrued Rights

The DOT argues that the statutory savings clauses found in Iowa Code sections 4.1(26) and 4.13 should not apply in the instant case because the "repealing statute expressly or by clear implication provides the contrary." *Women Aware*, 331 N.W.2d at 92. Our prior cases indicate that the legislature must explicitly provide by the language of the statute that the statute is to be applied retroactively in order to expressly extinguish accrued rights. *Id.*; *see also Hoover*, 251 N.W.2d at 531. The repealing statute in this instance

does not "expressly" indicate that the repeal should be applied retroactively. Moreover, there is no statement as to the legislative intent behind the repeal. *See* 1997 Iowa Acts ch. 177, § 9.

The DOT also argues that the repeal of section 321J.4(3)(b) indicates by "clear implication" that any rights which had accrued to defendants already sentenced for their third OWI offense would be extinguished. The DOT states that "[t]he legislature obviously passed House File 707 and repealed the early reinstatement provision because it believed that the privilege of early reinstatement of a driver's license[ ] to three-time OWI offenders was not adequately serving the needs of public safety." The DOT does not cite any source for this "expression" of legislative intent. No language in the repeal of section 321J.4(3)(b) suggests that the legislature's intent in repealing the statute for future offenders was also intended to bar prior offenders from enforcing their accrued right to a restoration hearing.

The proposition that the repeal of section 321J.4(3)(b) is substantive in nature, however, is well-supported by our prior case law. In *Thorp*, we concluded as follows:

> [A] statutory amendment that takes away a cause of action "that previously existed and does not give a party a remedy where none or a different one existed previously" is substantive, rather than merely remedial, legislation.

*Thorp*, 446 N.W.2d at 461 (quoting *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 121 (Iowa 1984)). The repeal of section 321J.4(3)(b) takes away a claim that previously existed and "does not give ... a remedy where ... one existed previously." Therefore, I conclude section 321J.4(3)(b) is substantive in nature and the repeal can be applied prospectively only.

For the reasons stated, I would annul the writ of certiorari and remand these cases for further proceedings in the district court.